# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4669

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

H. MARC WATZMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 1032—**John F. Grady**, *Judge*.

ARGUED OCTOBER 3, 2006—DECIDED MAY 16, 2007

Before MANION, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Marc Watzman conditionally pleaded guilty to one count of possessing child pornography, 18 U.S.C. § 2252A(a)(5)(B), and nine counts of receiving child pornography, 18 U.S.C. § 2252A(a)(2)(A), (b)(1). On appeal he challenges the denial of his motion to suppress evidence seized from his home, arguing that the search warrant was not based on probable cause because it was issued on the basis of illegally obtained evidence. Watzman also challenges the denial of his motion to require the government to prove his "intent to traffic" in connection with the nine counts of receiving child pornography. He contends the statute is unconstitutionally vague absent this element. We affirm.

## I. Background

In early 2003 a federal investigation based in New Jersey uncovered a company called "Regpay" located in Minsk, Belarus, that operated numerous fee-based websites containing pornographic images of children. By purchasing memberships to these sites, federal agents were able to view the websites' content and confirm that they advertised and included child pornography. In June 2003 investigators seized the company's customer database, which consisted of the names, mailing and e-mail addresses, and credit card numbers of the customers who bought access to any of its websites, as well as the dates of purchase and the names of the websites. One such customer was Marc Watzman, a Chicago resident who had paid for access to eight of the company's websites, including sites named "www.lolitacastle.com" and "www.undergroundlolitastudio.com."

In April 2003 Watzman began transacting with "Pedoshop," a "child pornography production organization" based in Russia. Through e-mail, Pedoshop offered Watzman access to its "very big child porno collection," and shortly thereafter Watzman placed an order. Between April and October he ordered 89 video clips that contained child pornography. Watzman paid $9700 to Pedoshop for the videos.

Based on information Watzman had supplied in registering for the websites, investigators tracked him to a post office box in Chicago and from there obtained his home address and driver's license records. Through visual surveillance, investigators confirmed that Watzman, a 37-year-old pediatrician, lived in a garden apartment at 1454 North Wieland Street in Chicago. On October 22, 2003, officers from the Chicago Police Department, cooperating with federal agents, went to Watzman's apartment and told him they were following up on a burglary he had

reported two years earlier. Watzman allowed the officers to enter his apartment, where they noticed a desktop computer connected to an active cable modem, as well as a laptop computer.

On October 24, 2003, federal agents applied for a warrant to search Watzman's apartment and seize evidence of his receipt and possession of child pornography, including credit card records; documents confirming his ownership of the post office box used to obtain membership to pornographic websites; computer hardware and software; and any sexually explicit images of children, including videos, photographs, and digital images. The warrant application was supported by a 23-page affidavit by Ronald Wolflick, a special agent from the Bureau of Immigration and Customs Enforcement and supervisor of the Cyber-Crimes Investigations Group in Chicago. Among the information included in the affidavit were four paragraphs in which Wolflick described the contact between Watzman and Chicago police officers two days earlier. The magistrate judge issued the warrant, and a search was conducted the following day. Among the items seized were Watzman's desktop and laptop computers, which held thousands of digital images depicting child pornography, and a number of DVDs with similar content, some encrypted and requiring extensive decoding.

Watzman was ultimately charged with one count of possessing child pornography, nine counts of receiving it, and one count of money laundering. Among various pretrial motions he filed was a motion to quash the search warrant and suppress all evidence seized during its execution on October 25. He principally argued that the ruse engaged in by the Chicago police officers to gain consent to enter his home on October 22 invalidated the search warrant. Watzman contended the ruse was unlawful and any information gleaned during the officers' visit—in particular, the knowledge that he had two

computers inside his home—was tainted. Absent this information, he argued, there was no reason to believe contraband would be found in the apartment and thus no basis for the warrant. The district court held that the October 22 consent search was invalid, but declined to suppress the evidence obtained on October 25 pursuant to the warrant. The court reasoned that "the remaining averments in the affidavit of Agent Wolflick provide probable cause for the issuance of the warrant."

Watzman also filed a motion to require the government to prove, as an element of receiving child pornography, that he intended to traffic in child pornography. Otherwise, he argued, no meaningful distinction could be made between "receiving" and "possessing" child pornography and therefore the statute was unconstitutionally vague. The district court denied the motion. Watzman then entered into a plea agreement with the government, pleading guilty to one count of possessing and nine counts of receiving child pornography and reserving his right to challenge the district court's rulings on his suppression motion and his motion challenging the receipt statute. The district court imposed concurrent sentences of five years' imprisonment on each count, the minimum penalty under the statute and below the advisory guidelines range of 78 to 97 months.

## II.  Discussion

On appeal Watzman first argues that the affidavit in support of the application for a search warrant did not establish probable cause to believe that evidence of a crime would be found in his apartment. We review de novo the district court's determination that the warrant was supported by probable cause. *United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006). Because this is a case where the validity of the warrant rests solely on the strength of

an affidavit, probable cause exists if the affidavit "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003); *see United States v. Anderson*, 450 F.3d 294, 302-03 (7th Cir. 2006). The inquiry is "practical, not technical." *Anderson*, 450 F.3d at 302; *see Sidwell*, 440 F.3d at 868.

The government has not challenged the district court's conclusion that any information gleaned during the phony "burglary follow-up" on October 22 is tainted. So we must determine whether the affidavit sworn on October 24, when purged of these facts, still contained sufficient information to establish probable cause. Watzman argues that it did not, primarily because the officers' observations on October 22 were the only evidence that his apartment had a working computer and Internet connection, and without that information the affidavit "failed to establish that any illegal activity could be found" in his home. The district court improperly assumed, he argues, that "pornography necessarily is viewed in the privacy of one's own home." Watzman submits that it is "equally likely" that one might download child pornography in "innumerable places, such as offices, public and private libraries, universities and airports."

Watzman's argument is meritless. First, probable cause is not certainty; it requires "only a probability or substantial chance that evidence may be found." *Sidwell*, 440 F.3d at 869. Thus, Watzman's assertion that alternative inferences might have been drawn about where child pornography might be stored is unavailing. Moreover, a finding of probable cause "does not require direct evidence linking a crime to a particular place." *Anderson*, 450 F.3d at 303. Reasonable inferences are permitted. *Id.*; *United States v. Angle*, 234 F.3d 326, 335 (7th Cir. 2000). In his affidavit Agent Wolflick explained in great detail his experience with consumers of child pornography and

specifically averred that these individuals tend to hoard collections at home. The district court's reliance on these expert representations is not an "assumption"; the court was entitled to rely on Agent Wolflick's expertise to conclude that there was a fair probability that child pornography would be found in Watzman's home. *See United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (citing "expert information" in affidavit that "pornographers tend to maintain their collections of material for long periods, usually at home"); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (holding that affidavit provided "ample reason" to believe items sought were in defendant's apartment, where affiant stated that "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes").

Watzman further contends that the information in the affidavit was stale. The most recent listed date on which Watzman downloaded child pornography was in July 2003, and the warrant was not sought until October 2003. Accordingly, Watzman asserts, there was no evidence that he still possessed any child pornography, other than Agent Wolflick's "uncorroborated assertion" that individuals who view child pornography tend to make collections and maintain them for years.

Watzman's argument is unconvincing. The age of information contained in an affidavit is only one factor a judge considers, and it is less important when the criminal activity in question is apparently continuous. *See United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999). Moreover, we previously have concluded that "[i]nformation a year old is not necessarily stale as a matter of law, *especially where child pornography is concerned.*" *United States v. Newsom*, 402 F.3d 780, 783

(7th Cir. 2005) (emphasis added). In *Newsom*, the affidavit before the judge did not state that child pornographers tend to hold on to their stashes; rather, "it was clear from the context" that law enforcement officials believed that the defendant still possessed such materials. *Id.* Here, Agent Wolflick specifically averred that individuals who view child pornography typically "maintain their collections for many years" and "keep and collect items containing child pornography over long periods of time." Again, despite Watzman's insistence to the contrary, the district court was entitled to rely on the experience of an expert in the field of enforcing child pornography laws when evaluating the sufficiency of the affidavit. *See United States v. Gourde*, 440 F.3d 1065, 1071-72 (9th Cir. 2006) (en banc) (four-month lapse immaterial where affidavit explained that consumers of child pornography become "pack rats" due to the difficulty of obtaining materials); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (rejecting argument that information about images transmitted ninety-one days before search was stale on basis of affiant's statement that "child pornographers generally retain their pornography for extended periods"). In this case, where only three months passed, and Agent Wolflick attested that those who possess child pornography save their materials, Watzman's argument that the information in the affidavit was stale is meritless.

Watzman also challenges the district court's rejection of his argument that the statute criminalizing the receipt of child pornography is unconstitutionally vague "because it does not define 'receipt' or distinguish it from the offense of mere possession." Watzman contends that "without any evidence of trafficking and distributing," "receipt" cannot be distinguished from "possession" and, therefore, the statute "enables arbitrary and discriminatory prosecution." A criminal statute is unconstitutionally vague if it does not define the criminal offense with enough specificity to

provide people of ordinary intelligence with notice of what is prohibited or if it fails to provide explicit standards to prevent arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006). The statute in question makes it a crime for a person to "knowingly receive[ ] or distribute[ ] . . . child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2). In contrast, the subsection of § 2252A concerning simple possession targets any individual who "knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." § 2252A(a)(5)(B).

Watzman has not established that § 2252A(a)(2) fails either the "notice" or the "arbitrary enforcement" tests for unconstitutional vagueness. We have previously rejected the argument that "the distinction between receipt and possession of child pornography is meaningless, because anyone in possession of child pornography must have received it at some time.*" United States v. Myers*, 355 F.3d 1040, 1042-43 (7th Cir. 2004). We noted in *Myers* that to be convicted of receiving, the defendant must have known the material he was receiving depicted minors engaged in sexually explicit conduct. *See id.* at 1042 (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994)). Accordingly, a person who receives child pornography by accident (for example, if he sought adult pornography but was sent child pornography instead) is not guilty of knowingly receiving it, though he is guilty of possessing it if he retains it. *Myers*, 355 F.3d at 1042; *see United States v. Malik*, 385 F.3d 758, 759 (7th Cir. 2004) (positing that a person who created an image or found it in trash

could "possess" child pornography without ever receiving it). We stated that receiving materials that have been shipped in interstate commerce is conduct more closely linked to the market for child pornography and so "possession and receipt are not the same conduct and threaten distinct harms.*" Myers*, 355 F.3d at 1042-43; *see United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) (explaining that "[t]ransporting and receiving child pornography increases market demand"). This is so without an element of "intent to traffic."

Although *Myers* did not address a vagueness challenge, the opinion squarely rejected the premise of Watzman's constitutional argument—that receipt and possession are substantially the same offense. By distinguishing receipt from possession, the two subsections of the statute are sufficiently clear about what conduct each prohibits. In addition, it cannot be said that the receiving child pornography statute relies on the discretion of those who enforce it to define its terms. We have recognized that all receivers are possessors but not all possessors are receivers, and so the matter of which crime to charge is not simply a product of the prosecutor's whims, as Watzman suggests. Watzman's conduct violated multiple statutes, but this is unremarkable, *see Malik*, 385 F.3d at 760, and has no bearing on whether the statute is unconstitutionally vague.

Finally, Watzman contends that receiving child pornography exclusively for his own private use is not the type of conduct at which the statute is aimed. We have previously rejected the argument that there is some sort of "personal use" exception to this statute. *See United States v. Ellison*, 113 F.3d 77, 81 (7th Cir. 1997) ("[E]ven the receipt of the prohibited materials for personal use, without more, keeps producers and distributors of this filth in business.").

AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*