In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3154

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRAL C. MORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-CR-30232 — **Michael J. Reagan**, *Chief Judge.*

ARGUED APRIL 12, 2016 — DECIDED MAY 6, 2016

Before WOOD, *Chief Judge*, FLAUM, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Defendant-appellant Darral C. Morris pled guilty to unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Morris later tried to withdraw his guilty plea, but the district court denied his motion. The district court found that Morris met the requirements of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"),

and accordingly sentenced him to 180 months in prison. Morris appeals, arguing that the ACCA is unconstitutionally vague and challenging the district court's denial of his motion to withdraw his guilty plea. We affirm.

## I. Background

In August 2013, police officers in southwestern Illinois discovered a fully-loaded semi-automatic pistol in Morris's vehicle. On October 23, 2013, a federal grand jury indicted Morris with one count of unlawful possession of a firearm by a felon in violation of § 922(g)(1). Morris pled guilty on October 2, 2014. The plea agreement included an anticipatory sentencing guideline range based on the underlying charge and Morris's criminal history. The agreement stated that if Morris met the requirements of the ACCA, he would have a total offense level of 31, a criminal history category of VI, and a sentencing range of 118 to 235 months. At Morris's plea hearing, the district court reiterated that the government's sentencing recommendation under the ACCA would be 118 to 235 months.

However, it later came to light that the plea agreement contained a typographical error. The sentencing range should have been *188* to 235 months, as reflected in the presentence investigation report ("PSR"), which was filed after Morris's guilty plea. Because of this error in the plea agreement, Morris filed a written motion to withdraw his guilty plea on July 7, 2015. The district court denied this motion.

On September 25, 2015, over Morris's objection, the district court found that Morris met the requirements of the ACCA and sentenced him to 180 months in prison, a fine of $750, three years of supervised release, and a $100 special assessment. Morris appeals.

## II. Discussion

### A. Armed Career Criminal Act

On appeal, Morris argues that the district court erred in sentencing him under the ACCA because the statute is unconstitutionally vague. We review de novo a defendant's sentence pursuant to the ACCA. *United States v. Zuniga*, 767 F.3d 712, 718 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1018 (2015). We also review de novo the constitutionality of a statute. *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012).

A statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). Vagueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand. *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

In this case, Morris was convicted of violating § 922(g)(1), which typically carries a statutory maximum sentence of ten years. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of fifteen years if the defendant has three previous convictions for a "violent felony or a serious drug offense,[1] or both, *committed on occasions different from one*

---

[1] Section 924(e)(2)(B) of the ACCA defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year … that—
>
> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or

*another* … ." § 924(e)(1) (emphasis added). The district court found that Morris has three previous convictions that fall under the ACCA: a residential burglary conviction and two serious drug convictions. The latter are from 2010, when Morris was convicted of two counts of the unlawful delivery of a controlled substance for two drug sales that occurred on February 20, 2009 and February 24, 2009.

Morris argues that the "committed on occasions different from one another" language of the ACCA is unconstitutionally vague because the statute does not specify a methodology for determining whether criminal acts are considered separate events. He contends that this vagueness grants undue discretion to courts and that the ACCA fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct the ACCA encompasses. We disagree.

Our case law makes clear that Morris's two drug offenses are considered separate convictions under the ACCA. We

---

(ii) is burglary, arson, or extortion, [or] involves use of explosives ....

Section 924(e)(2)(A) defines the term "serious drug offense" as

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

have explained that "crimes that occur simultaneously will be deemed to have occurred on a single occasion; but the passage of even a small amount of time between crimes" may be enough to separate them for purposes of the ACCA. *United States v. Elliott*, 703 F.3d 378, 383 (7th Cir. 2012). The emphasis is on whether the defendant had the opportunity to "cease and desist or withdraw" from the criminal activity before engaging in the subsequent crime. *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000).

In *Cardenas*, we treated two sales of crack cocaine on the same day as separate and distinct criminal episodes. *Id.* The sales were made to the same people, forty-five minutes apart, and took place half a block from one another. *Id.* Despite the temporal proximity and similar fact pattern, we reasoned that because the defendant had plenty of time to change his mind between sales, the sales constituted two separate transactions for purposes of the ACCA. *Id.* Similarly, Morris had ample time to cease and desist from the criminal activity between the first drug sale on February 20, 2009 and the second sale on February 24, 2009. Thus, the district court properly treated these two counts as two separate predicate convictions for purposes of the ACCA. *See United States v. Nigg*, 667 F.3d 929, 936 (7th Cir. 2012) (three armed robberies committed within six days constituted separate criminal episodes).

Morris argues that because some of our sister circuits have applied the ACCA differently, the statute is unconstitutionally vague. *Compare United States v. Hudspeth*, 42 F.3d 1015, 1019–21 (7th Cir. 1994) (en banc) (holding that each unlawful entry was a separate and distinct episode where defendants burglarized three adjacent businesses in a strip mall over the course of thirty minutes), *with United States v. McElyea*, 158

F.3d 1016, 1021 (9th Cir. 1998) (treating a fact pattern almost identical to that of *Hudspeth* as a single criminal episode). However, a circuit split is insufficient to show that a statute is unconstitutionally vague. *United States v. Morrison*, 686 F.3d 94, 104 (2d Cir. 2012) ("[I]t is manifest that conflicts between courts over the interpretation of a criminal statute do not in and of themselves render that statute unconstitutionally vague."); *United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) ("[T]he fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional.").[2]

Thus, Morris has not shown that the ACCA is unconstitutionally vague as applied to the facts of his case, and the district court did not err in sentencing him accordingly.

## B. Guilty Plea

Next, Morris argues that the district court erred in denying his motion to withdraw his guilty plea. A guilty plea must be made "voluntarily and knowingly." *United States v. Fard*, 775 F.3d 939, 943 (7th Cir. 2015). After the court accepts a guilty plea, a defendant may withdraw his plea if he presents a "fair

---

[2] Morris also argues that there is tension between our statement in *United States v. Godinez*, 998 F.2d 471, 473 (7th Cir. 1993) that "the question is not whether one crime overlaps another but whether the crimes reflect distinct aggressions," and Justice Brennan's statement in his concurrence in *Ashe v. Swenson*, 397 U.S. 436, 449 (1970) (Brennan, J., concurring) that a defendant's alleged robbery of six poker players in the home of one of the victims was "one criminal episode." This argument fails because *Ashe* involved issues of collateral estoppel and double jeopardy and did not address the application of the ACCA. *See* 397 U.S. at 442. As such, the statement Morris references is taken out of context.

and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). We review the district court's denial of a defendant's motion to withdraw a guilty plea for an abuse of discretion and its factual findings supporting that decision for clear error. *Fard*, 775 F.3d at 943.

In this case, the plea agreement contained a typographical error and incorrectly stated that the sentencing range would be *118* to 235 months imprisonment, when the correct guideline range was actually *188* to 235 months. Morris was sentenced to 180 months imprisonment.

Morris argues that due to the error in the plea agreement, his plea was not made "knowingly" and he did not have a full understanding of the consequences of pleading guilty. *See United States v. Harden*, 758 F.3d 886, 888–89 (7th Cir. 2014) (explaining that a guilty plea must be made with "sufficient awareness of the relevant circumstances and likely consequences" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))). Morris contends that he bargained for a particular sentence—118 to 235 months—and that the government promised to recommend a sentence on the low end of the guideline range. According to Morris, the prosecutor broke this promise by recommending a sentence at the low end of the range of 188 to 235 months, and thus Morris believes he is entitled to rescind his plea.

This argument fails for several reasons. As the district court aptly noted, the written plea agreement clearly states that the anticipated sentencing range in the agreement is "not binding on the Court, and that the Court ultimately will determine the Guideline range after receiving the Presentence Report … ." Although there was a typographical error in the plea agreement, the PSR contained the correct range, and

Morris received a copy of the PSR. Further, the plea agreement states: "The Defendant expressly recognizes that, regardless of the Guideline range found or the sentence imposed by the Court, Defendant will not be permitted to withdraw Defendant's plea of guilty." The district court emphasized this qualifying language during the plea hearing, stating:

> Until we get the Presentence Report and I consider it … I don't know where you are going to be. On your best day you get probation. On your worst day you get life… . With respect to the plea agreement, the Government believes, and you are not committing to this, … you are going to have a … sentencing range of 118 months to 235 months … . I don't know if that is right or not … . Understand that is a recommendation, and I have to consider it, but I do not have to follow it. Do you understand that?

Morris repeatedly confirmed that he understood the district court's explanation, which supports our conclusion that he knew the consequences of pleading guilty. *See United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987) (noting that a determination of the defendant's state of mind at the time of the entry of a plea depends in large part on what the defendant said during the plea hearing).

Additionally, our precedent provides that a discrepancy between the sentencing range stated in the plea agreement and the sentencing range found by the court is an insufficient basis for withdrawing a guilty plea. *United States v. Patterson*, 576 F.3d 431, 438–39 (7th Cir. 2009). In *Patterson*, the defendant signed a plea agreement anticipating a sentence that ended

up being lower than the sentence ultimately imposed by the district court. *Id.* at 438. Patterson argued that the district court should have vacated his guilty plea because of this discrepancy. *Id.* We upheld the validity of the plea agreement, explaining that the plea agreement stated that it did not control the sentence imposed by the district court. *Id.* at 438–39. The same reasoning applies here. Thus, the district court did not abuse its discretion in denying Morris's motion to withdraw his plea. *See United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996) (noting that although there must be a "meeting of minds" on all essential elements of a valid guilty plea, the defendant's sentence is not an essential term of the agreement, and the parties leave the determination of the sentence to the discretion of the district court).

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.