In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3414

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BECKY HOLMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-CR-217 — **C.N. Clevert, Jr.**, *Judge.*

ARGUED SEPTEMBER 21, 2016 — DECIDED OCTOBER 18, 2016

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge*. Becky Holman pled guilty to conspiracy to distribute heroin and was initially sentenced to thirty-six months in prison. She appealed, and for reasons unrelated to this appeal, we vacated Holman's sentence and remanded for resentencing. On remand, the district court sentenced Holman to thirty-three months' imprisonment. Holman now appeals, arguing that the district court procedurally

erred at resentencing by lengthening her prison term to pro-
mote rehabilitation from her heroin addiction. For the reasons
that follow, we affirm the district court's sentence.

## I. Background

Becky Holman began using heroin to manage pain associ-
ated with rheumatoid arthritis. She became addicted, and fi-
nanced her addiction by dealing in a conspiracy that operated
in rural central Wisconsin from 2011 to 2012.

In April 2012, Amalia Henschel died of a heroin overdose.
In the course of investigating that death, Wisconsin law en-
forcement discovered Holman's heroin distribution ring and
found that one of Holman's co-conspirators had provided
Henschel with heroin on the day she died. Several members
of the conspiracy identified Holman as a regular participant.
On July 28, 2012, law-enforcement agents conducted a con-
trolled purchase of heroin from Holman. Holman was ar-
rested and charged with participating in a drug conspiracy
involving one kilogram or more of a mixture containing her-
oin, which caused a death. *See* 21 U.S.C. §§ 846, 841(a)(1),
(b)(1)(A), (b)(1)(C). The government later dropped the caus-
ing-death element from § 841(b)(1)(A).

On February 19, 2014, Holman pled guilty to one count of
conspiring to distribute heroin. *See* 21 U.S.C. §§ 846, 841(a)(1),
841(b)(1)(C). At her first sentencing hearing on September 10,
2014, the district court accounted for downward adjustments
under the "safety valve" provision of U.S.S.G. § 5C1.2 and for
acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).
The court then calculated Holman's final Guidelines sentenc-
ing range as fifty-seven to seventy-one months. The district
court considered probation inadequate, but found that the

Guidelines range was higher than necessary, and sentenced Holman to thirty-six months' imprisonment. The court stated, among other things, that "the critical thing in this case is the fact that this conspiracy is one that ultimately resulted in the death of someone. I should say someone who was taking heroin supplied by this conspiracy died….And so the Court sees your offense as serious."

Holman appealed her sentence to this court, and while that appeal was pending, the district court conducted sentencing proceedings for the co-conspirator who had supplied Henschel with heroin on the day she died. In April 2015, at the conclusion of those proceedings, the district court found the government's evidence insufficient to prove that the co-conspirator's heroin actually caused Henschel's overdose. As a result, on June 23, 2015, this Court vacated Holman's judgment of conviction and remanded for resentencing, so that the district court could re-determine Holman's sentence without consideration of the death.

At resentencing on October 14, 2015, the district court explained that it would not consider the death in determining Holman's sentence. The government asked the district court to again impose a thirty-six-month sentence, and Holman asked for probation. Holman noted, among other things, that her addiction resulted from her attempts to alleviate "chronic pain," and that she had entered a drug treatment program in September 2012 and had not relapsed since that time. She also stated that her incarceration thus far had been at a medical center that did not meet her needs, and asked that "if there's any need for incarceration, … that the Court indicate that she be housed at a grade-five facility which … is more consistent with her illness."

The district court considered in turn many of the factors in 18 U.S.C. § 3553(a). It explained that conspiring to distribute heroin is "undoubtedly … a serious offense," and that there remained "a need for general deterrence so that others involved in the crime of distributing heroin might think twice." The court also considered "the needs of the public," and the need to keep heroin "out of the hands of [potential users]." The court then addressed the defendant's drug problem, stating:

> At this stage, … [t]he Court is not satisfied that Ms. Holman has undergone sufficient treatment for her drug problem.
>
> [Defense counsel] has noted that in his view the Bureau of Prisons by virtue of its placement of Ms. Holman in a level-four facility where little attention was given to her drug problem until sometime in August of this year, consequently, it would—it does seem to me prudent that Ms. Holman receive further treatment and/or counseling so that she can continue with her life unencumbered by a drug addiction. And certainly Ms. Holman needs the tools to cope with the potential of relapse after she is finished with her obligations in this case.

Finally, the district court considered the applicable Guidelines range—fifty-seven to seventy-one months' imprisonment—and the sentences of Holman's co-defendants, which ranged from time served to 124 months. The court also noted:

> [A] small reduction in the sentence that was previously imposed is warranted, in part, because

> Ms. Holman was eligible for safety valve consideration and is in criminal history category one.

> Moreover, upon further reflection, more weight should be given to her level of cooperation and the trigger for her involvement in this case.

Consequently, the district court imposed a thirty-three-month prison sentence. It later underscored:

> [T]here is a need for Ms. Holman to undergo monitoring of her potential to continue using drugs particularly in light of stressors that may occur. Pain is something that arises sometimes out of the blue, and stressful situations arise as well.

> When a person has been addicted as Ms. Holman has been addicted, it is important that there be counseling and treatment available.

The court asked whether there were any additional matters or arguments that the parties wished to raise, and Holman asked the court to recommend that she be "eligible for the residential drug treatment program offered by the Bureau of Prisons." The district court agreed, "inasmuch as she does have an addiction that should continue to be treated; and it would be useful in her rehab in preparation for release."

Holman then objected to the thirty-three-month sentence "in general," arguing that the district court ignored the requirement contained in 18 U.S.C. § 3553(a) that the court impose a sentence that is "sufficient but not greater than necessary." The district court responded that the sentence was, in its view, "no greater than necessary under the circumstance,"

in light of the Sentencing Guidelines, in order to avoid a disparity with Holman's codefendants, and because Holman was responsible for conspiring to distribute one to three kilograms of heroin. The district court elaborated:

> And so when I look at the distribution of heroin here and the conspiracy to which your client was involved, a sentence of 33 months given Ms. Holman's addiction take into account her acceptance of responsibility, take into account her debriefing which resulted in her eligibility for the safety valve, and looking at her need for rehab and treatment.
>
> I just cannot come to the conclusion that a probationary sentence such as you have urged or a lesser sentence would be appropriate given all of the circumstances here.
>
> And as I pointed out, heroin distribution is a serious offense particularly in view of the consequences that flow from using this drug. People need to be chilled from distributing this drug and using this drug.

Holman objected again, noting that she had not used drugs since her initial appearance in the case. The district court responded, "So are you suggesting that she not go to a drug facility so I can take that out?" Holman explained that ongoing drug treatment would be appropriate, but contended that her sentence should be shorter because, "as far as a danger to the community, she ha[d] taken a huge step in the right direction." The district court clarified and concluded:

> I'm not suggesting [that] she represents a clear and present danger to the community at this time. I did not suggest that. And if that was suggested by my remarks, I do want to clarify what I said to make sure it is clear that, no, I'm not suggesting that she is currently a danger because she represents the potential of going out and reselling.

> What I was more concerned about and was trying to address is that the fact that she does have a potential of relapsing given her history and the need to make sure that she has the coping skills to handle her personal affairs when she leaves prison and when she goes back into the community where stressors do occur.

Holman responded, "I'm aware of that.… I think [the] Court made that clear," and raised no other objections, stating, "That will do it." Before the hearing ended, Holman again sought the court's "recommendation that she be admitted to a program," and the court confirmed that "[t]he recommendation for admission to the 500 Hour Drug Program will be included." This appeal followed.

## II. Discussion

Holman claims that the district court improperly lengthened her prison term to promote rehabilitation from her heroin addiction. The Supreme Court in *Tapia v. United States*, 564 U.S. 319 (2011), interpreted § 3582(a) of the Sentencing Reform Act to prohibit a district court from imposing or lengthening a prison sentence to promote an offender's rehabilitation. 564 U.S. at 327, 333. However, the Court also held that

"[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," nor by "trying to get [a defendant] into an effective drug treatment program." *Id.* at 334.

### A.  Standard of Review

As an initial matter, the parties disagree on the appropriate standard of review. Holman contends that the district court procedurally erred by "lengthen[ing]" her prison sentence to promote rehabilitation, and de novo review should apply. *See, e.g.*, *United States v. Annoreno*, 713 F.3d 352, 356 (7th Cir. 2013); *United States v. Curby*, 595 F.3d 794, 796 (7th Cir. 2010) ("Whether the district court followed proper sentencing procedure is a question of law we review de novo.") (citation omitted). The government argues, however, that the "plain error" standard of Rule 52(b) applies because Holman lodged no *Tapia* objection at the time of resentencing. *See* Fed. R. Crim. P. 52(b); *United States v. Seals*, 813 F.3d 1038, 1044 (7th Cir. 2016) (explaining that, although "we [generally] review a district court's application of the Sentencing Guidelines de novo….[m]ore deference is due … where an appellant failed to properly raise a claim below"); *id.* at 1045 ("[F]orfeited [issues] are reviewed for plain error."); *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1058 (7th Cir. 2011) ("Because the appellant did not raise these objections during the sentencing hearing, we review the decisions for plain error.") (citation omitted).

We agree that Holman did not raise a *Tapia* objection before the district court. "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *United States v. Fluker*, 698 F.3d 988, 997 (7th Cir.

2012) (citation and internal quotation marks omitted). Otherwise, "the party is deemed to have waived the issue on appeal." *Id.* (citation omitted). At resentencing, Holman asked the court to recommend that she be "eligible for the residential drug treatment program offered by the Bureau of Prisons," and the court agreed. She then objected "in general" to the sentence as "ignor[ing] the [§] 3553 caveat[] that the sentence shall be sufficient but not greater than necessary," but did not specify a possible *Tapia* violation by name or in substance. When Holman noted that she had "been drug-free since before she made her initial appearance … in this case," the district court understood her to be referencing her access to a drug treatment program while incarcerated, not the length of her sentence. After Holman clarified that she did need treatment but that she had made progress with respect to not being "a danger to the community," the district court explained that Holman's addiction had come up during the hearing not because she posed a danger to the community (as Holman seemed to think), but because Holman could benefit from the drug treatment program. At no point did Holman suggest that the district court was lengthening or imposing her sentence in order to rehabilitate her. Instead, Holman expressed satisfaction with the district court's explanation, stating, "That will do it." Holman's general objection that her sentence was "greater than necessary" thus did not properly preserve an objection under *Tapia*.

In the alternative, Holman argues that we should consider the alleged *Tapia* violation to be an "exception" to the district court's order, which Holman need not have raised below to preserve de novo appellate review. *See* Fed. R. Crim. P. 51(a) ("Exceptions to rulings or orders of the court are unnecessary."). "Where the district court has already made a decision

and said definitively that it is imposing [a sentence], a defend-ant need not take an 'exception' to preserve the issue for ap-peal." *United States v. Gabriel*, No. 15-3427, 2016 WL 4087225, at *3 (7th Cir. Aug. 2, 2016) (citation omitted); *see also United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("[A] litigant [need not] complain about a judicial choice after it has been made. Such a complaint is properly called, not an objection, but an exception."). "But a district court can announce a ten-tative decision or view and invite objections. A failure to ob-ject in those circumstances can amount to waiver." *Gabriel*, 2016 WL 4087225, at *3 (citation omitted).

The district court here, after announcing its thirty-three-month sentence, explicitly told Holman, "[I]f you believe that this Court has imposed an illegal sentence or that there are some issues or matters the Court has failed to take into ac-count, you through your counsel may be heard before the Court completes its sentencing hearing." The district court then asked whether there were "additional matters or argu-ments that the parties believe the Court has not taken into ac-count fully." The sentence was not yet definitive, and Holman still had an opportunity to object and potentially affect her ul-timate sentence. She did not do so with respect to a possible *Tapia* violation, and we thus review for plain error.

### B.  References to Holman's addiction and rehabilitation

To establish plain error, the defendant must show: "(1) an error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Guajardo-Martinez*, 635 F.3d at 1059 (quoting *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004)). The government contends that "Holman's argument fails at the first step, because there is no

'error' here." Holman points to three comments during her resentencing that she argues reveal a *Tapia* violation.

### 1. *Comment One*

First, Holman objects to the following statement by the district court:

> In the case of someone such as Ms. Holman, the Court had in the first instance, and still feels in this particular instance, a need to address the defendant's drug problem. At this stage, … [t]he Court is not satisfied that Ms. Holman has undergone sufficient treatment for her drug problem.
>
> [Defense counsel] has noted that in his view the Bureau of Prisons by virtue of its placement of Ms. Holman in a level-four facility where little attention was given to her drug problem until sometime in August of this year, consequently, it would—it does seem to me prudent that Ms. Holman receive further treatment and/or counseling so that she can continue with her life unencumbered by a drug addiction. And certainly Ms. Holman needs the tools to cope with the potential of relapse after she is finished with her obligations in this case.

Holman claims that this language arose in the context of the district court's explanation of why a prison sentence was necessary, after the district court considered the Guidelines range and recognized the need for general deterrence and to avoid unwarranted sentencing disparities with similarly situated

defendants. Thus, Holman argues, the district court took Holman's need for rehabilitation into account in imposing the thirty-three-month prison sentence.

In context, however, it is clear that the district court's comment acknowledges Holman's earlier request that "she be housed at a grade-five facility which … is more consistent with her illness." Immediately before the comment at issue, the court had referenced "the needs of the public and potential users of illicit drugs," and the "need to keep heroin out of the hands of individuals who might … prolong their addiction." The district court then logically moved to considering the defendant's own addiction and the opportunity for treatment while incarcerated. It revisited the issue later on, noting that "[w]hen a person has been addicted as Ms. Holman has been addicted, it is important that there be counseling and treatment available." The Supreme Court explicitly stated in *Tapia* that it did "*not* disapprove [of courts].…discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." 564 U.S. at 334. That is exactly what the district court did at sentencing. It referred to defense counsel's position that Holman ought to be placed somewhere with an effective drug treatment program, without discussing the length of time that one needs to qualify for or complete the program. *See United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012).

### 2. *Comment Two*

Second, Holman objects to the district's court explanation of why the thirty-three-month sentence was "appropriate given all of the circumstances here," which it provided after Holman objected to the sentence under § 3553(a). The court said:

> And so when I look at the distribution of heroin here and the conspiracy to which your client was involved, a sentence of 33 months given Ms. Holman's addiction take into account her acceptance of responsibility, take into account her debriefing which resulted in her eligibility for the safety valve, and looking at her need for rehab and treatment.

Holman argues that the district court thus improperly considered "her need for rehab and treatment" as an aggravating factor in its decision to impose a prison sentence, rather than granting her request for probation.

In fact, the resentencing record shows that the district court considered Holman's "need for rehab and treatment" as one of the mitigating factors in her case, along with her "acceptance of responsibility," and the "debriefing" that resulted in her "eligibility for the safety valve." This is consistent with Holman's own statement earlier in the proceeding that her addiction resulted from attempts to alleviate chronic pain, as well as the district court's prior explanation that Holman's eligibility for the safety valve, low criminal history category of one, level of cooperation, and "the trigger for her involvement in this case" (that is, her addiction to heroin as a painkiller) together warranted a sentence shorter than thirty-six months.

### 3.  *Comment Three*

Third, Holman objects to the following portion of the district court's response to her § 3553(a) objection:

> What I was more concerned about and was trying to address is the fact that she does have a potential of relapsing given her history and the need to make sure that she has the coping skills to handle her personal affairs when she leaves prison and when she goes back into the community where stressors do occur.

For the reasons already discussed, the district court's statement merely explains that Holman's addiction had come up during the hearing because Holman could benefit from the drug treatment program, which the district court had just referenced a moment earlier. Whereas the sentencing court in *Tapia* had stated that the defendant needed to be "in long enough" to get drug treatment, 564 U.S. at 322, here, the district court's language does not suggest that it lengthened or imposed Holman's sentence in order to ensure that Holman qualified for or completed a treatment program.

In sum, read in context, none of these comments alone or together indicate that the district court lengthened or imposed Holman's sentence to facilitate her rehabilitation. The court's references to Holman's addiction either explained the opportunities and benefits of Holman serving her sentence at a facility with effective addiction treatment, *see Lucas*, 670 F.3d at 795, or considered her addiction as a mitigating factor, neither of which is prohibited under *Tapia*. Moreover, any ambiguity with respect to the district court's statements is debatable at most and thus does not rise to level of plain error. *See United*

*States v. Ramirez*, 783 F.3d 687, 694 (7th Cir. 2015) ("[Plain error] cannot be subtle, arcane, debatable, or factually complicated.") (citation omitted); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847–49 (7th Cir. 2005) ("Under a plain error standard, an error must be clear or obvious ….") (citation omitted).

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment and sentence of the district court.