In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3292

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM T. BURROWS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 17-cr-40007 — **Sara Darrow**, *Judge.*

ARGUED SEPTEMBER 7, 2018 — DECIDED OCTOBER 9, 2018

Before FLAUM, RIPPLE, and BARRETT, *Circuit Judges.*

FLAUM, *Circuit Judge.* William Burrows conditionally pleaded guilty to one count of receiving child pornography pursuant to 18 U.S.C. § 2252A(a)(2)(A). He argues that § 2252A(a)(2)(A) is void for vagueness as applied to him, and therefore, that his indictment should have been dismissed. Additionally, he maintains that the district court erred at sentencing by basing his sentence, in part, on the need for sex

offender treatment. We disagree, and we affirm Burrows's conviction and sentence.

## I. Background

From July to August 2015, United States Secret Service agents used a peer-to-peer sharing network to download eight images of child pornography from a computer using an internet protocol address assigned to William Burrows's home. The Secret Service obtained a search warrant for his home and executed it on September 9, 2015.

A forensic search of a computer at the residence revealed a number of files received through the peer-to-peer sharing program, including videos depicting sexually explicit content of prepubescent females as young as six years old. Burrows waived his *Miranda* rights and stated that prior to deleting his child pornography collection ten days earlier, he had approximately twenty to thirty movies and several thousand images of child pornography on his computer.

On January 24, 2017, a grand jury indicted Burrows for knowingly receiving three digital media files of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). Burrows moved to dismiss the indictment, arguing § 2252A(a)(2)(A) is unconstitutionally vague. The district court disagreed, and on May 31, 2017, Burrows entered a conditional guilty plea.

On October 19, 2017, the district court conducted a sentencing hearing. It concluded that Burrows's total adjusted offense level was 32 and his criminal history category was I, resulting in a Guidelines range of 121–155 months' imprisonment. The court then examined the various 18 U.S.C. § 3553(a) factors. The court explained that not only was it concerned

about "general deterrence" and the "seriousness of the offense," but also, it believed Burrows posed a "greater risk to recidivate than other similarly situated individuals" based on his "juvenile history" and "pattern of violent outbursts." The court also addressed mitigating factors, including abuse Burrows suffered as a child. Then, it concluded:

> I did consider going towards the high end of what I think is the appropriate … guideline range of 121 to 151 … and I actually don't think that that's necessary after considering everything because I think that a sentence at the low end of 121 months will be sufficient to address the seriousness of the offense and also my concerns about your risk to recidivate and the need for general deterrence. But I also think that putting you on a life term of supervised release—you're relatively young; you're 33 years old…. [Y]ou're going to prison as an adult for the first time, and I think that that will be sufficient time to address the harm caused by your conduct and to also hopefully specifically deter you and give you time to avail yourself of the sex offender treatment as an adult because you haven't had that opportunity as an adult, just as a juvenile. And putting you on lifetime supervised release will be necessary given your prior history as a juvenile and all the other things that I mentioned that support my concern of your risk to recidivate and will be sufficient … to offset any need for additional time in prison above that low end of 121 months.

Finally, the court asked Burrows's counsel if he wished for "further elaborat[ion] on any of the reasons for imposing the sentence." He stated he did not. The court also asked whether it "addressed all of [Burrows's] principal arguments in mitigation." Counsel indicated that it did. The court then officially imposed the 121-month sentence and asked whether either party had "anything further." Both responded in the negative. Burrows now appeals.

## II. Discussion

### A.  Vagueness Challenge

We "review de novo the constitutionality of a statute." *United States v. Morris*, 821 F.3d 877, 879 (7th Cir. 2016). "A statute is unconstitutionally vague if it 'fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *Id.* (alteration in original) (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)).

At issue here is 18 U.S.C. § 2252A. The receipt provision makes it illegal for a person to "knowingly receive[] … any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." *Id.* § 2252A(a)(2)(A). A person who violates the receipt provision faces a mandatory minimum of five years' imprisonment. *Id.* § 2252A(b)(1). In contrast, the possession provision targets individuals who:

> knowingly possess[] … any … material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

*Id.* § 2252A(a)(5)(B). A person who violates the possession provision faces no mandatory minimum except in circumstances not relevant here. *Id.* § 2252A(b)(2).[1]

Burrows alleges § 2252A "is unconstitutionally vague because it does not distinguish receiving child pornography from possessing it, which does not impose a mandatory minimum sentence." He claims that in application, "he was unable to differentiate conduct prohibited by § 2252A(a)(2)(A) (receiving child pornography) from conduct prohibited by

---

[1] It may seem "puzzl[ing] … why receiving … should be punished more severely than possessing, since possessors, unless they fabricate their own pornography, are also receivers." *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001). "The explanation may be that receivers increase the market for child pornography and hence the demand for children to pose as models for pornographic photographs; possessors, at least qua possessors, as distinct from receivers, though most of them are that too, do not." *Id.* Thus, "[t]he possessor who creates his own pornography strictly for his personal use is not part of the interstate and international traffic in child pornography," and the distinction is important because that traffic "not only increases the demand for the production of such pornography but, by virtue of its far-flung scope, makes it extremely difficult to locate, let alone protect, the children exploited by it." *Id.*

§ 2252A(a)(5)(B) (possessing child pornography)." As a result of this supposed lack of distinction, he claims "the statute invites arbitrary enforcement by law enforcement, prosecutors, judges, and juries."

To agree with Burrows, we would need to overrule our decision in *United States v. Watzman*, 486 F.3d 1004 (7th Cir. 2007). In *Watzman* we rejected a vagueness challenge to § 2252A(a)(2). We held that "[b]y distinguishing receipt from possession, the two subsections of the statute are sufficiently clear about what conduct each prohibits," and that "it cannot be said that the receiving child pornography statute relies on the discretion of those who enforce it to define its terms." *Id.* at 1010. We rejected the argument that "receipt and possession are substantially the same offense," and we emphasized that a *possessor* of child pornography need not have *received* child pornography. *Id.* at 1009–10. We also noted that "'possession and receipt … threaten distinct harms'" because "receiving materials that have been shipped in interstate commerce is conduct more closely linked to the market for child pornography." *Id.* at 1009 (quoting *United States v. Myers*, 355 F.3d 1040, 1042–43 (7th Cir. 2004)); *see United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand."). In short, we concluded that "all receivers are possessors but not all possessors are receivers, and so the matter of which crime to charge is not simply a product of the prosecutor's whims." *Watzman*, 486 F.3d at 1010. Instead, because the defendant violated both statutes, the government simply exercised its discretion in choosing to prosecute under § 2252A(a)(2)(A) rather than § 2252A(a)(5)(B). *See United States v. Batchelder*, 442 U.S. 114, 123–24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government

may prosecute under either so long as it does not discriminate against any class of defendants.").

Burrows claims *Watzman*'s analysis has "been undermined by other courts of appeals and this Court's subsequent decisions." He points primarily to cases that held convicting a defendant of both receiving and possessing child pornography violates the Double Jeopardy Clause. *See United States v. Ehle*, 640 F.3d 689, 694–99 (6th Cir. 2011); *United States v. Davenport*, 519 F.3d 940, 943–47 (9th Cir. 2008); *United States v. Miller*, 527 F.3d 54, 70–74 (3d Cir. 2008). "The Double Jeopardy Clause … 'protects against multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The Third, Sixth, and Ninth Circuits all found Double Jeopardy Clause violations because they concluded that possessing child pornography is a lesser-included offense of receiving it. *Ehle*, 640 F.3d at 695; *Davenport*, 519 F.3d at 945; *Miller*, 527 F.3d at 72.[2]

These cases are not helpful to Burrows's argument. While it might be true that one cannot receive child pornography without also possessing it, one *can* possess child pornography without receiving it. Indeed, six years after determining that

---

[2] In *United States v. Halliday*, we declined to decide "whether to align ourselves with [other circuits] on the issue of whether possession of child pornography is a lesser-included offense of receipt." 672 F.3d 462, 470 (7th Cir. 2012).

possession of contraband is a lesser-included offense of receipt for double jeopardy purposes, the Sixth Circuit held that § 2252A is not unconstitutionally vague. *United States v. Dunning*, 857 F.3d 342, 348–49 (6th Cir. 2017). As it reasoned, "there is at least one difference between [receipt and possession]: a person who produces child pornography has not received it." *Id.* at 349;[3] *see also United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001) ("[P]ossessors, *unless they fabricate their own pornography*, are also receivers." (emphasis added)).

Additionally, Burrows contends that, because our holding in *Watzman* "was premised on a finding that possessing child pornography contained no scienter requirement," *Watzman* is no longer good law. *See United States v. Halliday*, 672 F.3d 462, 469 (7th Cir. 2012) ("Admittedly, the reasoning of [cases including *Watzman*] is now in question, both because of our more recent views of the scienter requirement in possession cases, and because of how our sister circuits have viewed possession and receipt in the child pornography context."). It is true that, after *Watzman*, we held that "[p]ossession of a photograph of an underage girl or boy must be knowing." *United States v. Peel*, 595 F.3d 763, 771 (7th Cir. 2010). Likewise, other circuits also apply a scienter requirement to both receipt and possession. *See e.g.*, *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010). But the fact that possession and receipt both have a scienter requirement does not change our conclusion

---

[3] Burrows argues *Dunning* is not relevant because "there was no evidence" that Burrows produced child pornography. But this is precisely why *Dunning* is relevant: Like Burrows, the defendant in *Dunning* was not a producer. The Sixth Circuit's use of this distinction was simply to show that the two provisions encompass different conduct.

in *Watzman*. Indeed, as noted above, by creating child pornography himself, one can possess it without having received it.

In sum, we reaffirm our holding from *Watzman*: 18 U.S.C. § 2252A(a)(2)(A) is not unconstitutionally vague.[4]

**B. Sentencing**

Next, Burrows maintains the district court erred under *Tapia v. United States*, 564 U.S. 319 (2011), by impermissibly lengthening his prison term to promote his rehabilitation. In *Tapia*, the Supreme Court held that 18 U.S.C. § 3582(a) "precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation." *Id.* at 321. At the same time, it made clear that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," nor by "trying to get [a defendant] into an effective drug treatment program." *Id.* at 334.

### 1. *Standard of Review*

As an initial matter, the parties disagree about the proper standard of review. Generally, we review a district court's

---

[4] Burrows also cites *Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016), to support his vagueness challenge. There, an Indiana statute prohibited possession of cocaine within one-thousand feet of a youth program center. *Id.* at 765. The statute defined "youth program center" as any "building or structure that on a regular basis provides … services for [minors]." *Id.* (quoting Ind. Code § 35-41-1-29(a)). We found the statute unconstitutionally vague because "the use of the word 'regular' in the definition of 'youth program center' provides no objective standard, and thereby fails to place persons of ordinary intelligence on notice of the conduct proscribed and allows for arbitrary enforcement." *Id.* at 784. *Whatley* is inapposite. Unlike the word "regular," a person of ordinary intelligence can understand the meaning of the word "receive" and conform his behavior appropriately.

sentencing procedure de novo. *United States v. Holman*, 840 F.3d 347, 352 (7th Cir. 2016). Here, however, the government argues that Burrows's claim should be reviewed only for plain error because he failed to raise a *Tapia* objection at the time of sentencing. *See United States v. Seals*, 813 F.3d 1038, 1044–45 (7th Cir. 2016) ("[M]ore deference is due … where an appellant failed to properly raise a claim below …."); *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1058 (7th Cir. 2011) ("Because the appellant did not raise these objections during the sentencing hearing, we review the decisions for plain error.").

Burrows admits he did not raise a *Tapia* objection in the district court, yet still contends we should review de novo. He asserts that "an 'objection' to the district court's sentence in this context should be considered an 'exception' to the district court's order, which [he] need not raise in the district court to preserve de novo appellate review." The Federal Rules of Criminal Procedure "do not require a litigant to complain about a judicial choice after it has been made. Such a complaint is properly called, not an objection, but an exception." *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009); *see* Fed. R. Crim. P. 51(a) ("Exceptions to rulings or orders of the court are unnecessary."). Still, "a district court can announce a tentative decision or view and invite objections. A failure to object in those circumstances can amount to waiver" or forfeiture. *United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016); *see also United States v. Lewis*, 823 F.3d 1075, 1083–84 (7th Cir. 2016).

Here, after the district court announced its 121-month sentence, it explicitly asked Burrows: "Do you wish for me to …

further elaborate on any of the reasons for imposing the sentence?" His counsel responded no. The court continued, "Have I addressed all of your principal arguments in mitigation?" Counsel answered affirmatively. At that point, "[t]he sentence was not yet definitive, and [Burrows] still had an opportunity to object and potentially affect [his] ultimate sentence." *See Holman*, 840 F.3d at 353. Burrows "did not do so with respect to a possible *Tapia* violation, and we thus review for plain error." *See id.*

### 2. *Plain Error Review*

"To establish plain error, the defendant must show: '(1) an error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" *Id.* (quoting *Guajardo-Martinez*, 635 F.3d at 1059). While acknowledging that "the district court's sentence was not based entirely, or even primarily, on rehabilitation needs," Burrows contends the court committed a *Tapia* error because "the sentence was at least based, in part, on the district court's conclusion that Burrows needed to attend sex offender treatment." He relies on the court's statement made immediately after it initially announced a 121-month sentence, in the context of explaining its decision to impose a life term of supervised release:

> But I also think that putting you on a life term of supervised release—you're relatively young; you're 33 years old. I think that—you're going to prison as an adult for the first time, and I think that that will be sufficient time to address the harm caused by your conduct and to also hopefully specifically deter you *and give you time to avail yourself of the sex offender treatment as an*

> *adult because you haven't had that opportunity as an*
> *adult*, just as a juvenile. And putting you on life-
> time supervised release will be necessary given
> your prior history as a juvenile and all the other
> things that I mentioned that support my con-
> cern of your risk to recidivate and will be suffi-
> cient … to offset any need for additional time in
> prison above that low end of 121 months.

(emphasis added).

Read in context, this statement does not suggest that the court "impos[ed] or lengthen[ed] [Burrows's] prison term in order to promote [his] rehabilitation." *See Tapia*, 564 U.S. at 321. Rather, "the district court did what *Tapia* plainly allows: discuss the opportunities for rehabilitative programs while [Burrows] is imprisoned." *See United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012). There is "no indication that the district court chose the length of the sentence based upon the greater opportunities for rehabilitation a longer prison sentence al-lowed." *See id.*; *cf. United States v. Gallagher*, 526 F. App'x 658, 663–64 (7th Cir. 2013) ("[W]hile the district court's statement demonstrates that it sincerely hopes that [the defendant] re-ceives treatment while in prison, the statement does not es-tablish that the district court imposed or lengthened [the de-fendant's] prison sentence in order to ensure that she received treatment."). Indeed, it appears the court determined the length of Burrows's sentence, in its words, "to address the se-riousness of the offense and also [the] concerns about [Bur-rows's] risk to recidivate and the need for general deter-rence." Thus, the court did not commit any error under *Tapia*, let alone error that is "plain" — "so obvious that 'the trial judge and prosecutor were derelict in countenancing it.'" *See United*

*States v. Ramirez*, 783 F.3d 687, 694 (7th Cir. 2015) (quoting *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011)).

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.