FILED
United States Court of Appeals
Tenth Circuit

March 15, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee.

v.

CLIFFORD RAYMOND SALAS,

Defendant - Appellant.

No. 20-2158
(D.C. No. 2:12-CR-03183-RB-3)
(D.N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH**, **EBEL**, and **CARSON**, Circuit Judges.
_____

This appeal addresses the sentencing of Mr. Clifford Raymond Salas,

who threw two homemade firebombs through the window of a tattoo shop

in a strip mall. Mr. Salas argues that the district court erroneously

- assumed that people were in the strip mall when he threw the
  firebombs and

- exceeded the statutory maximum on one count.

Under plain-error review, we reject the first challenge, concluding that the

district court's explanation doesn't reflect an obvious factual mistake. But

---

*    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the court did commit plain error by exceeding the statutory maximum for unlawful possession of an explosive device.

### 1.     Mr. Salas appeals the upward variance and 180-month sentence for unlawful possession of an explosive device.

Mr. Salas was convicted of arson, conspiracy to commit arson, and possession of an explosive device after a felony conviction. At sentencing,[1] the district court found a guideline range of

- 110–137 months for arson and conspiracy and

- 110–120 months for possessing an explosive device after a felony conviction.

The prosecutor sought an upward variance to make the total prison time 180 months. The district court granted the upward variance and imposed concurrent sentences of 180 months on each count.

Mr. Salas appeals, arguing that the district court erred by

- mistakenly finding that people were working in the mall when it was firebombed and

- exceeding the 120–month statutory maximum for possessing an explosive device after a felony conviction.

### 2.     For these unpreserved arguments, we apply the plain-error standard.

Because Mr. Salas did not present these arguments in district court, we review only for plain error. *United States v. Schneider*, 704 F.3d 1287,

---

[1]     This was the second sentencing proceeding. In a previous appeal, we vacated the conviction on one other count and remanded for resentencing. *United States v. Salas*, 889 F.3d 681, 688 (10th Cir. 2018).

2

1293 (10th Cir. 2013). Under the plain-error standard, we can reverse only if Mr. Salas shows an "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

**3.      The district court did not plainly err in granting the upward variance.**

Mr. Salas urges vacatur of the upward variance, contending that the district court based the upward variance on an erroneous factual finding—that employees were in the strip mall when it was firebombed.[2] For this contention, Mr. Salas asserts that

- the prosecutor argued that employees were in a call center next to the tattoo shop at the time of the firebombing and

- the district court relied on the prosecutor's argument to grant the upward variance.

Both parts of this rationale are at least debatable because of ambiguities in the record.

**A.      The prosecutor didn't expressly argue that employees were working in the mall when it was firebombed.**

The prosecutor referred to the dangerousness of Mr. Salas's actions, but didn't expressly say that anyone was in the strip mall when it was firebombed. For example, in a sentencing memorandum, the prosecutor

---

[2]      Mr. Salas points out that the trial record contains no evidence that anybody was working in the mall because the arson took place at roughly 2:00 a.m.

noted "great potential for harm based on the fact that [the tattoo parlor targeted for the firebombing] was next door to a call center that employed dozens of people," although "no one was physically harmed at the time." R. vol. 1, at 30. And at the sentencing hearing, the prosecutor made two pertinent statements about the danger:

1.    Mr. Salas had "endangered everybody that was working in that strip mall. That strip mall had a call center in it. And thank God, it resulted in no loss of life, no injury."

2.    Mr. Salas's behavior had constituted "reckless disregard for the safety of other people in this community."

R. vol. 3, at 9, 11.

According to Mr. Salas, the prosecutor's reference to the call center implied that employees were in the mall when it was firebombed. Otherwise, Mr. Salas explains, no employees would have faced any danger.

But this isn't the only way to interpret the prosecutor's statements. These statements could suggest that the number of call center employees created a risk that someone might have been on duty at any given time. In light of that risk, the prosecutor might have meant to emphasize Mr. Salas's disregard for the potential loss of life. The prosecutor pointed out that

- someone had been in the tattoo parlor within an hour of the firebombing and

- at least two cars had been parked in the strip mall at the time of the firebombing.[3]

**B.    Even if the prosecutor had argued that employees were then in the mall, the district court didn't expressly rely on that argument.**

Even if the prosecutor had argued that employees were in the mall during the firebombing, that argument would matter only if the district court had agreed. Mr. Salas insists that the district court did agree, pointing to the court's

- reference to the dangerousness of the crime and

- reliance on "the reasons stated by the Government."

*Id.* at 17. But the district court could reasonably regard the firebombing as particularly dangerous without relying on the actual presence of employees in the mall. Even though hindsight reveals that nobody had been in the mall at the time of the firebombing, the crime could have been particularly dangerous based on the potential for physical harm.[4] *See* pp. 4–5, above.

---

[3]    The prosecutor did not say that anyone was in the mall when Mr. Salas threw the firebomb, and the presence of cars in the parking lot doesn't show that anyone was inside. But the presence of cars could have created a risk that individuals might be in the mall.

[4]    The government also observes that the fire would draw firefighters, pointing to a lieutenant's testimony that describes the danger firefighters may face. But the lieutenant appeared to discuss only the general risk to firefighters. And he stated that "there wasn't really anything other than smoke, flames, elevated heat" that were common to all types of fires. Supp. R. vol. 4, at 26.

5

So the court's reference to dangerousness does not obviously show a belief that anyone was in the mall when it was firebombed.[5]

The same is true of the district court's reliance on "the reasons stated by the Government." R. vol. 3, at 17. In seeking an upward variance, the prosecutor asked the district court to consider "the nature and circumstances of the offense" under 18 U.S.C. § 3553(a)(1). In discussing the nature and circumstances of the offense, the prosecutor referred to

- the destructive way that Mr. Salas had started the fire,

- the economic losses from the fire,

- the potential harm to employees of the strip mall,

- the victims' emotional and economic losses, and

- the premeditated nature of the crime.

---

[5]   The government argues that the district judge could not have interpreted the prosecutor's statements this way, in part because the judge was familiar with the facts. Mr. Salas counters that more than five years had passed since the trial, so the district judge might have forgotten the details and relied on the prosecutor's account. We have no way of knowing what the district judge remembered and what he didn't.

R. vol. 1, at 30; R. vol. 3 at 9, 11.[6] The district court might have been adopting either *some or all* of these arguments.[7]

Mr. Salas argues that if the district court had not considered the presence of employees in the mall, the court would have imposed a lower sentence or considered the crime less dangerous. So Mr. Salas infers that the district court probably did consider the presence of employees in the mall. But Mr. Salas's inference rests on speculation and doesn't overcome the ambiguity in the district court's explanation.

### C.    Because of these ambiguities, Mr. Salas did not show an obvious error.

The availability of differing interpretations affects the inquiry under the plain-error standard because an error is "plain" only if it is "clear or obvious." *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Massey*, 663 F.3d 852, 860 n.6 (6th Cir. 2011). The alleged error

---

[6]    On appeal, the government also raises the potential harm to the "two dozen firefighters [who] responded to the scene." Appellee's Resp. Br. at 13, 15. But the district court didn't refer to this factor when granting the upward variance.

[7]    The presentence report does not resolve this ambiguity because it doesn't discuss danger to employees. The report notes only that the offense

- involved the use of a destructive device to destroy a commercial place of business and

- caused substantial economic losses.

R. vol. 2, Presentence Report at pp. 4−5 ¶ 7, pp. 8−9 ¶ 26.

here isn't clear or obvious given the ambiguities in the prosecutor's arguments and the district court's rationale. *See In Re Sealed Case No. 98-3116*, 199 F.3d 488, 491 (D.C. Cir. 1999) ("To hold . . . that a record at worst ambiguous supports reversal is hardly consistent with plain error review."); *United States v. Holman*, 840 F.3d 347, 355 (7th Cir. 2016) (stating that "any ambiguity with respect to the district court's statements is debatable at most and thus does not rise to [the] level of plain error").

4.     **The district court plainly erred by exceeding the statutory maximum for possessing an explosive device after a felony conviction.**

Mr. Salas also argues that the district court erred in imposing a 180-month sentence for possessing an explosive device after a felony conviction. 18 U.S.C. § 842(i). The statutory maximum prison term for the offense was 120 months. 18 U.S.C. § 844(a)(1).

A sentence that exceeds the statutory maximum "trigger[s] per se, reversible, plain error." *United States v. Archuleta*, 865 F.3d 1280, 1292 (10th Cir. 2017) (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 739 n.10 (10th Cir. 2005) (en banc)). Because the court exceeded the statutory maximum, the government concedes that the district court committed plain error in imposing the sentence for possession of an explosive device after a felony conviction. We accept this concession and agree that the district court committed plain error in sentencing Mr. Salas for unlawful possession of an explosive device.

8

5.    **Conclusion**

The district court did not commit plain error in varying upward. But the court did plainly err by exceeding the statutory maximum for unlawful possession of an explosive device. We thus remand for resentencing on this count.

Entered for the Court


Robert E. Bacharach
Circuit Judge