*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Omar M. GOMEZ, Boatswain's Mate Second Class
United States Coast Guard, Appellant

**No. 16-0336**
Crim. App. No. 1394

Argued October 26, 2016—Decided January 30, 2017

Military Judge: Christine N. Cutter

For Appellant: *James S. Trieschmann,* Esq. (argued); *Lieutenant Jason W. Roberts.*

For Appellee: *Lieutenant Tereza Z. Ohley* (argued); *Stephen P. McCleary,* Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN and Judges RYAN and SPARKS joined. Judge STUCKY filed a separate opinion concurring in the result.

———————

Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a general court-martial with enlisted representation convicted Appellant of aggravated sexual assault, aggravated sexual contact, and indecent exposure, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). The court-martial also convicted Appellant of violating a lawful general order by engaging in sexual harassment, maltreatment, making a false official statement, aggravated sexual contact, abusive sexual contact, and committing a general disorder by using a female Guardsman's camera without her consent to photograph his penis, in violation of Articles 92, 93, 107, 120, and 134, UCMJ, 10 U.S.C. §§ 892, 893, 907, 920, 934 (2012). The convening authority approved Appellant's adjudged sentence of confinement for eight years, a reduction to E-1, and a dishonorable discharge. The United States Coast Guard Court of Criminal Appeals (CCA) affirmed the approved findings and sentence.

We granted review to consider the following issue:

> Whether the military judge erred by permitting two complaining witnesses to testify on sentencing that Appellant was responsible for their pregnancy complications with no evidence connecting his misconduct to the complications.

*United States v. Gomez*, 75 M.J. 307 (C.A.A.F. 2016). We hold that Appellant has failed to meet his burden under the plain error standard because (1) he has not demonstrated prejudice with respect to the military judge's admission of one victim's testimony, and (2) he has not demonstrated clear or obvious error with respect to the military judge's admission of the other victim's testimony. Accordingly, we affirm the CCA's decision.

## I. Background

Appellant was a petty officer (E-5) aboard the United States Coast Guard Cutter (USCGC) Gallatin (WHEC-721). He supervised three female members of the USCGC Gallatin's deck force, including Coast Guardsmen SW and MS. As to these three subordinates, Appellant was charged with offenses related to touching their buttocks, breasts and/or vaginal areas. Appellant also was charged with making sexual comments to a fourth female subordinate who was outside of his direct chain of command.

Besides this misconduct toward his crew, Appellant also was charged with sexually assaulting the civilian girlfriend of another USCGC Gallatin crew member. The assault occurred while the civilian was sleeping next to her boyfriend. The civilian awoke to Appellant's penis in her vagina. Appellant admitted to a Coast Guard Investigative Services special agent that he had "a recollection of … having sex with a faceless female in [his crew member's] apartment" and the woman "must have been" the civilian.

The court-martial convicted Appellant of committing an aggravated sexual assault against the civilian and a number of offenses against the four female USCGC Gallatin crew members. With regard to SW, the court-martial convicted Appellant of one specification of maltreatment and two specifications of aggravated sexual contact. With regard to MS,

the court-martial found Appellant guilty of one specification of abusive sexual contact and one specification of wrongfully appropriating her camera to take a picture of his penis.

At sentencing, the victims testified about the impact that the crimes and the trial process had on them. Trial counsel elicited the following information from SW:

> Q. [C]an you tell this panel how the crimes that the accused, excuse me, the convicted has perpetrated upon you as it impacts your life?
>
> A: Um, it's definitely impacted tremendously. I uh, it's really hard going home to my family and you know, having to lie to them, tell them I'm going to training because I'm here. Because they don't know. And um, it's hard to see my baby, because he was born premature, so, the whole July thing, it's early. It was early. It's just, it's really hard.
>
> Q: Do you believe stress had something to do with? [sic]
>
> A: I was diagnosed with pre-eclampsia, which is brought on by stress.
>
> Q: Do you believe that this trial and this process has caused you to have stress?
>
> A: Yes.

Defense counsel did not object to this testimony or cross-examine SW.

Trial counsel elicited the following information from MS:

> Q. [H]as this been a stressful process for you, going through a trial?
>
> A: It has. It's, it's been very stressful. I'm more aggressive, I'm more angry, I'm more detached from ….
>
> Q: And has the stress had any impact on your pregnancy?
>
> A: It did, and I'm also getting help for that, um, it could be for, and, the stress from this case and I found out that early on that I was supposed to have twins and one didn't make it. And with more stress from this case, I was worried for this baby that was living inside me, hopefully hoping that this stress didn't make his heart rate go up, or hopefully I was protecting him, and every time I would always go to

the doctor to see my blood pressure, always ask questions if my son was okay, because that's my, that's my baby.

Defense counsel did not object to this testimony or cross examine MS.

During presentencing arguments, neither party mentioned SW's pregnancy. However, trial counsel briefly mentioned MS's pregnancy by noting that Appellant's unsworn statement failed to include an apology "for causing stress during her pregnancy." Trial counsel then requested that the members sentence Appellant "to a term between twenty and thirty years imprisonment and a dishonorable discharge." The defense "urge[d] … no more than five years confinement." The maximum punishment for all offenses of conviction was confinement for 120 years and 4 months, forfeiture of all pay and allowances, a fine, a reduction to E-1, and a dishonorable discharge. The members ultimately sentenced Appellant to confinement for eight years, a reduction to E-1, and a dishonorable discharge.

## II. Discussion

We granted review to determine whether the military judge erred by permitting SW and MS to testify at presentencing that Appellant was responsible for their pregnancy complications "without any evidence connecting his misconduct to [their] complications." *See Gomez*, 75 M.J. at 307.

Because Appellant did not object to SW's or MS's testimony, we apply the plain error framework in addressing that question. *See United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008). Thus, Appellant bears the burden of establishing the following three prongs: (1) there was error; (2) the error was clear or obvious; and (3) the error materially prejudiced a substantial right. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). "As all three prongs must be satisfied …, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). As we explain below, Appellant has not established the prejudice prong for the testimony of SW, or the clear or obvious prong for the testimony of MS.

## A. SW

Turning first to SW, the record reflects that she sought to make several points in the course of her brief testimony: the trial process caused her stress; stress causes preeclampsia;[1] she experienced preeclampsia during her pregnancy; and the preeclampsia caused her child to be born prematurely. In terms of whether SW's testimony was properly admissible, we first note that the Government may introduce evidence of aggravating circumstances pertaining to the "medical impact on … any person or entity who was the victim of an offense committed by the accused," Rule for Courts-Martial 1001(b)(4); these aggravating circumstances can include "the effect of the process" on the victim, *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009); and they also can encompass the harm inflicted on the victim's family, such as a child, *United States v. Wilson,* 35 M.J. 473, 476 (C.M.A. 1992). On its face then, it would appear that SW's testimony was admissible when viewed purely in the context of the type of evidence that can be properly introduced in aggravation during the presentencing phase of a court-martial.

However, when viewed in a broader context, three concerns immediately arise regarding the admissibility of SW's testimony. Namely, it would appear that SW was either: (1) providing the panel members with a diagnosis that she had reached on her own without possessing the necessary medical expertise to do so; or (2) providing the panel members with expert testimony about her medical condition without the proper foundation being laid for her qualifications to do so; or (3) repeating as hearsay some statements that her doctor had made to her. Under any of these three scenarios, SW's testimony was inadmissible. *See* Military Rule of Evidence (M.R.E.) 701(c); M.R.E. 702; M.R.E. 802; *see also Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014) (noting that lay witness may describe injuries and symptoms but may not provide a medical diagnosis or ex-

---

[1] The accuracy of this assertion is subject to medical debate. *See Preclampsia,* MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/000898.htm (last visited Jan. 17, 2017) (stating that the "exact cause of preeclampsia is unknown").

plain medical causation); *Wingster v. Head*, 318 F. App'x 809, 815 (11th Cir. 2009) ("[M]edical causation issue presents a technical and scientific issue that requires the specialized knowledge of an expert medical witness.").

Despite these concerns, however, we note that whether this testimony constituted clear or obvious error is a close question. SW's testimony about her pregnancy complications was fleeting and somewhat disjointed. Therefore, it is arguable whether the M.R.E. 701, M.R.E. 702, or hearsay problems should have been evident to the military judge at trial. However, we ultimately conclude that we need not resolve this issue because even assuming that there was clear or obvious error here, Appellant was not prejudiced by the admission of SW's testimony.

In order to establish prejudice, Appellant must demonstrate that SW's testimony "substantially influenced the adjudged sentence." *United States v. Eslinger*, 70 M.J. 193, 200–01 (C.A.A.F. 2011) (citation omitted) (internal quotation marks omitted). "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A. 1985)); *see also United States v. Latorre*, 53 M.J. 179, 182 & n.7 (C.A.A.F. 2000). We conclude that these factors weigh against finding prejudice for three reasons.

First, the Government presented a strong sentencing case in aggravation. The court-martial convicted Appellant of serious offenses involving the sexual assault of a sleeping civilian and Appellant's repeated abuse of his petty officer rank to maltreat/sexually harass and sexually assault four subordinates, including while onboard the USCGC Gallatin and during port calls. *See Eslinger,* 70 M.J. at 201 (examining the severity of the offenses of conviction). Indeed, many of the guilty findings were supported by Appellant's admission of misconduct. Moreover, even disregarding SW's testimony about her pregnancy complications, the record reflects that some of the victims, particularly the civilian, provided

compelling testimony about the serious impact that Appellant's crimes had on them.

Second, SW never explicitly told the panel members how prematurely her baby was born, nor did she testify about whether the preeclampsia and premature birth resulted in any childbirth complications or led to any adverse health consequences for the baby. Based on the omission of these details, the evidence of the premature birth was not particularly aggravating. This conclusion is further supported by the fact that trial counsel did not exploit or even mention SW's pregnancy complications in presentencing argument. *See United States v. Barnes*, 33 M.J. 468, 474 (C.M.A. 1992) (finding no prejudice in part because improper aggravation evidence "was mentioned only briefly" in sentencing argument).

Third, the members' ultimate sentencing decision indicates that they were not influenced by SW's testimony about her pregnancy complications. The members returned a sentence of confinement for eight years, a reduction to E-1, and a dishonorable discharge. This sentence was much closer to the defense's request that Appellant receive "no more than five years confinement" than it was to trial counsel's requested punishment of twenty to thirty years imprisonment, or to the maximum punishment, which included confinement for 120 years and 4 months. *See Eslinger*, 70 M.J. at 201; *Barnes*, 33 M.J. at 474 (noting that a sentence far below the maximum suggested that "scant attention was paid" to improper aggravation evidence).

Consequently, we hold that there is an insufficient basis to conclude that SW's testimony about her pregnancy complications substantially influenced the members' sentencing decision. Accordingly, we further hold that Appellant has not met his burden under the third prong of the plain error test because he has not established that any error that occurred regarding the admission of SW's testimony materially prejudiced a substantial right.

**B. MS**

Turning to the admission of MS's testimony, we conclude that Appellant has not met his burden under the second prong of the plain error test. When examining this prong, we

ask whether the error was so obvious "in the context of the entire trial" that "the military judge should be 'faulted for taking no action' even without an objection." *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) (quoting *Maynard*, 66 M.J. at 245); *see also United States v. Frady*, 456 U.S. 152, 163 (1982) (noting that error is clear if "the trial judge and prosecutor [would be] derelict in countenancing it, even absent the defendant's timely assistance in detecting it").

We do not find a sufficient basis to fault the military judge for failing to intervene during MS's presentencing testimony because MS's testimony was patently ambiguous. When trial counsel asked MS whether the stress from the trial process affected her pregnancy, she responded:

> It did, and I'm also getting help for that, um, it could be for, and, the stress from this case and I found out that early on that I was supposed to have twins and one didn't make it. And with more stress from this case, I was worried for this baby that was living inside me, hopefully hoping that this stress didn't make his heart rate go up, or hopefully I was protecting him, and every time I would always go to the doctor to see my blood pressure, always ask questions if my son was okay, because that's my, that's my baby.

Simply stated, even after analyzing this statement at length on the written page it is difficult to discern what MS was trying to convey; it would have been exponentially more difficult for the military judge to do so while listening to the testimony only once in the midst of the fast-moving presentencing process, particularly where the defense made no objection. *Cf. United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999) (citation omitted) (internal quotation marks omitted) (noting in prosecutorial misconduct context that failure to object is "some measure" of "minimal impact"); *United States v. Madsen*, 809 F.3d 712, 718 (1st Cir. 2016) ("[W]e cannot simply assume, in the absence of a contemporaneous objection, that the jury interpreted the prosecutor's words in the worst possible light.").

On one hand, MS may have been seeking to make the point that the trial process caused her stress and this stress caused her to miscarry a twin. If so, this point would likely have been highly damaging to Appellant's sentencing case,

and the same question raised about SW's testimony—was there an appropriate evidentiary basis to admit such medical testimony—would obviously present itself. On the other hand, however, MS may instead have been reporting that she had miscarried one twin due to reasons unconnected to Appellant's conduct or to the trial process, and she was worried that the stress associated with the case might harm her remaining unborn child. If MS intended to convey this latter point, it was not error for the military judge to admit her testimony. (As noted above, we permit aggravation evidence about the impact of the trial process, *see Stephens*, 67 M.J. at 235, and about the harm to the victim's family, *see Wilson*, 35 M.J. at 476.) Therefore, because MS's testimony was subject to two plausible interpretations—one of which renders the testimony admissible—we cannot conclude that the military judge clearly or obviously erred in admitting it. *See United States v. Holman*, 840 F.3d 347, 355 (7th Cir. 2016) (holding that "any ambiguity with respect to the district court's statements is debatable at most and thus does not rise to level of plain error"); *United States v. Etienne*, 772 F.3d 907, 916 (1st Cir. 2014) (refusing on plain error review to permit appellant "to gain any benefit from his choice not to clarify the ambiguity" in witness's testimony); *United States v. Rose*, 587 F.3d 695, 701 (5th Cir. 2009) (discerning no clear error where evidence was ambiguous).

### III. Decision

Because there was no plain error in admitting the testimony of SW and MS, we affirm[2] the decision of the United States Coast Guard Court of Criminal Appeals.

---

[2] We note that the CCA opinion erroneously states in part that Appellant was convicted of three specifications of aggravated sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012). Appellant was in fact charged with and convicted of one specification of aggravated sexual contact and two specifications of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012).

Judge STUCKY, concurring in the result.

As Appellant failed to timely object to the testimony of SW and MS, the majority correctly reviewed its admission for plain error. Failure to establish any one of the three prongs of the plain error standard is fatal to such a claim. *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). As Appellant failed to establish prejudice—the third prong of the plain error standard—from the admission of the testimony at issue, I see no reason to examine the other two prongs—whether there was error that was clear or obvious. Therefore, I concur in affirming the judgment of the United States Coast Guard Court of Criminal Appeals.