*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Deontray D. COLEMAN, Private First Class**
United States Army, Appellant

**No. 19-0087**

Crim. App. No. 20170013

Argued May 22, 2019—Decided July 10, 2019

Military Judge: Jacob D. Bashore

For Appellant: *Captain Zachary A. Szilagyi* (argued); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond*, and *Major Julie L. Borchers* (on brief).

For Appellee: *Major Marc B. Sawyer* (argued); *Colonel Steven P. Haight* and *Lieutenant Colonel Eric K. Stafford* (on brief); *Captain Jessika M. Newsome* and *Captain Meredith M. Picard.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, SPARKS, and MAGGS, joined.

————————

Judge OHLSON delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of attempted murder (Specification 1 of Charge I) and one specification of willfully discharging a firearm under circumstances to endanger human life (Specification of Charge VII) in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934 (2012).[1] We granted review to determine whether the

---

[1] The military judge also convicted Appellant of two additional offenses contrary to his pleas—one specification of failure to obey an order and one specification of willfully discharging a firearm, in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934 (2012). In addition, the military judge convicted Appellant pursuant to his pleas of one specification of failure to go to his place of duty, two specifications of disrespect toward a superior commissioned officer, one specification of disrespect toward a noncommis-

willfully discharging a firearm specification is multiplicious
with the attempted murder specification. We conclude that
the two specifications are not multiplicious because each
offense requires proof of an element not included in the
other. Accordingly, we affirm the judgment of the lower
court.

## I. Background

In 2015, Specialist QB was running errands near Fort
Hood, Texas, with his then-fiancé, AW, and AW's three-year-
old daughter, YW. When AW received a phone call, SPC QB
believed it was from Appellant, whom he perceived as a
romantic rival. SPC QB attempted to call back Appellant,
but Appellant did not answer. Instead, Appellant sent a text
message directing SPC QB to a nearby residential street.
SPC QB drove to the designated location with AW and YW
in the car. When they arrived, Appellant fired a Smith and
Wesson .40 caliber handgun at SPC QB's car, striking the
front fender and driver's side door.

Based on these events, the Government charged
Appellant with three specifications of attempted murder,
one specification of willfully discharging a firearm under
circumstances to endanger human life, and one specification
of reckless endangerment.[2] Appellant was acquitted of the
two specifications of attempted murder relating to AW and
YW. However, he was convicted of willfully discharging a
firearm and attempting to murder SPC QB. At the court-
martial, Appellant did not raise any multiplicity claims.

---

sioned officer, and one specification of failure to obey an order, in
violation of Articles 86, 89, 91, and 92, UCMJ, 10 U.S.C. §§ 886,
889, 891, 892 (2012). The adjudged and approved sentence con-
sisted of reduction to E-1, confinement for ten years and eight
months, and a dishonorable discharge. Upon appellate review, the
United States Army Court of Criminal Appeals (CCA) dismissed
the contested specification for failure to obey an order, and reas-
sessed the sentence to the same earlier approved sentence.

[2] The military judge acquitted Appellant of the reckless en-
dangerment specification. The military judge also acquitted Appel-
lant of an additional specification of attempted murder that was
not related to the events discussed in this opinion.

## II. Applicable Law

Multiplicity claims "are forfeited by failure to make a timely motion to dismiss, unless they rise to the level of plain error." *United States v. Barner*, 56 M.J. 131, 137 (C.A.A.F. 2001).[3] "[F]or an appellant to prevail under plain error review, there must be an error, that was clear or obvious, and which prejudiced a substantial right of the accused." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019). Relief is only available to an appellant when all three of these prongs are satisfied. *United States v. Gomez*, 76 M.J. 76, 79 (C.A.A.F. 2017).

The Fifth Amendment's Double Jeopardy Clause precludes a court, contrary to the intent of Congress, from imposing multiple convictions and punishments under different statutes for the same act or course of conduct. *United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993). In *Teters*, we abandoned the "fairly embraced" doctrine of *United States v. Baker*, 14 M.J. 361 (C.M.A. 1983), and adopted the separate elements test articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether one offense is multiplicious of another. *Teters*, 37 M.J. at 375–76.[4] Accordingly, for more than a quarter century we have used the *Blockburger* test to determine whether specifications are multiplicious. *See, e.g.*, *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

---

[3] In *United States v. Hardy*, this Court concluded that an objection to unreasonable multiplication of charges is waived if not raised before the entry of an unconditional guilty plea. 77 M.J. 438, 443 (C.A.A.F. 2018). We decline to determine whether this holding applies in the instant case. Our opinion in *Hardy* was issued in June 2018. In the instant case the Government filed its brief in April 2019 and oral argument was held in May 2019. Despite this timing, the Government did not cite *Hardy*, or raise the issue of waiver. Accordingly, we decline to sua sponte raise this issue on the Government's behalf.

[4] The "fairly embraced" test under *Baker* compared the "pleadings and proof" of one specification to the "pleadings and proof" of another specification to determine whether they were multiplicious. *Teters,* 37 M.J. at 374–75, 374 n.2 (internal quotation marks omitted).

In *Blockburger*, the Supreme Court stated:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304. As we have noted, "It is now unquestionably established that this test is to be applied to the elements of the statutes violated and not to the pleadings or proof of these offenses." *Teters*, 37 M.J. at 377. Therefore, this Court's application of *Blockburger* focuses on a strict facial comparison of the elements of the charged offenses. *See, e.g.*, *United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010).

### III. Analysis

To determine whether two charges are multiplicious, we engage in a three-step inquiry. First, we determine whether the charges are based on separate acts. If so, the charges are not multiplicious because separate acts may be charged and punished separately. *See United States v. Neblock*, 45 M.J. 191, 197 (C.A.A.F. 1996); *see also Ebeling v. Morgan*, 237 U.S. 625, 629–30 (1915). Here, the record demonstrates that the two specifications at issue were based on a single act—the shooting of a firearm at a vehicle containing SPC QB, AW, and YW on September 7, 2015.

Second, because the charges are based upon a single act, we next must determine whether Congress made "an overt expression of legislative intent" regarding whether the charges should be viewed as multiplicious. *Teters*, 37 M.J. at 376. Both parties agree that the respective statutes are silent as to congressional intent and we concur. Therefore, we need not delve further into that question.

Third and finally, because there is no overt expression of congressional intent, we must seek to infer Congress's intent "based on the elements of the violated statutes and their relationship to each other." *Id.* at 376–77. Specifically, if each statute requires proof of an element not contained in the other, it may be inferred that Congress intended for an accused to be charged and punished separately under each

statute. *Id.* (citing *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger*, 284 U.S. at 304).

Application of this test is straightforward in the instant case. The Article 134, UCMJ, offense with which Appellant was charged (i.e., the offense of willfully discharging a firearm under circumstances to endanger human life) requires proof of prejudice to good order and discipline, or evidence of service discrediting conduct, to satisfy the terminal element. *Manual for Courts-Martial, United States* pt. IV, para. 81.b.(4) (2016 ed.) (*MCM*). However, the Article 80, UCMJ, offense of attempted murder requires no such proof. *MCM* pt. IV, paras. 4.b., 43.b.(2). Similarly, the Article 80, UCMJ, offense of attempted murder requires proof that the act was done with the specific intent to commit a certain offense under the UCMJ. (Here, that "certain offense" was the killing of SPC QB without justification or excuse. *See United States v. Allen*, 21 M.J. 72, 73 (C.M.A. 1985) (holding that the specific intent to kill is an essential element of attempted murder).) However, the Article 134, UCMJ, offense of willfully discharging a firearm under circumstances to endanger human life requires no such proof. Instead, the Article 134, UCMJ, offense merely requires that the discharge of a firearm be done "willful[ly]." *MCM* pt. IV, para. 81.b.(2). Because each offense contains a unique element, "the *Blockburger* rule is clearly satisfied in this case, and separate offenses warranting separate convictions and punishment can be presumed to be Congress' intent." *Teters*, 37 M.J. at 377–78.

Appellant disagrees with this conclusion. He argues that the terminal element of his Article 134, UCMJ, offense was "necessarily implied" in the attempted murder offense. Appellant's argument is without merit. In the past decade we have repeatedly held that the terminal element of an Article 134, UCMJ, offense is not inherently included within other elements and is instead a separate and distinct element that the government must prove. *United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009) ("[To the extent that prior decisions] support the proposition that clauses 1 and 2 of Article 134, UCMJ, are *per se* included in every enumerated offense, they are overruled."); *see, e.g., United States v. Girouard*, 70 M.J. 5, 9 (C.A.A.F. 2011); *United*

*States v. Jones*, 68 M.J. 465, 473 (C.A.A.F. 2010); *Anderson*, 68 M.J. at 385; *see also United States v. Fosler*, 70 M.J. 225, 233 (C.A.A.F. 2011).

Further, Appellant's position implicitly asks this Court to wade backwards into murky pre-*Teters* waters and readopt the "fairly embraced" approach to multiplicity. However, the Supreme Court correctly characterized this approach as "rife with the potential for confusion" and far less certain and predictable in its application than the elements-based approach. *Schmuck v. United States*, 489 U.S. 705, 720–21 (1989). Accordingly, we decline to adopt Appellant's position.

Because we conclude that there was no error in charging Appellant with both attempted murder and willful discharge of a firearm under circumstances to endanger human life, Appellant cannot prevail under the plain error test.

## IV. Decision

The judgment of the United States Army Court of Criminal Appeals is affirmed.