# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and ARGUELLES
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 MATTHEW Z. CONNER**
**United States Army, Appellant**

ARMY 20220620

Headquarters, Fort Campbell
Travis Rogers, Military Judge (arraignment)
Sean S. Park, Military Judge (trial)
Lieutenant Colonel Ryan W. Leary, Staff Judge Advocate

For Appellant: Lieutenant Colonel Dale C. McFeatters, JA; Major Mitchell D. Herniak, JA; Captain Andrew R. Britt, JA (on brief); Major Mitchell D. Herniak, JA; Captain Tumentugs D. Armstrong, JA (on reply brief).

For Appellee: Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA; Captain Dominique L. Dove, JA (on brief).

24 January 2024

--------------------------------
SUMMARY DISPOSITION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

ARGUELLES, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of abusive sexual contact and one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920. The military judge sentenced appellant to a reduction in rank to E-1, total forfeitures, twenty-three months of confinement, and

the mandatory dishonorable discharge.[1] This case is before this court for review pursuant to Article 66, UCMJ, and appellant raises one assignment of error which merits discussion but no relief.

## BACKGROUND

Appellant, who was openly gay, and the victim were friends who had socialized in the past, watched movies, and shared common interests. On the night in question, appellant, the victim, and several members from their unit went out drinking at the local bars. While out, the victim and appellant made plans to watch a movie in appellant's room later that night, and sometime after 0100, the victim went to appellant's room. After appellant and the victim both fell asleep during the movie, appellant woke up and noticed that the victim, who was still asleep, had an erection. At that point, appellant first proceeded to rub the victim's penis with his hand and then performed oral sex on the victim, all while the victim was still asleep. During the plea colloquy, appellant stated he was attracted to the victim and "thought [they] were at the point where that was acceptable," but also admitted the victim was asleep and did not give him consent.

As part of his plea agreement, appellant agreed to plead guilty to one specification of abusive sexual contact and one specification of sexual assault, in exchange for a sentencing range of 18 to 24 months and any other lawful punishments. The sexual assault specification required a mandatory dishonorable discharge.

Other than appellant's Soldier Record Brief, the government did not put on any sentencing evidence. The victim was not present, but his Special Victim's Counsel read the following unsworn statement on his behalf:

> Your Honor, I'm sorry that I could not be here today. It is not because I have not been impacted by Private Conner's actions, but rather because they have impacted me greatly, both my life and my health. Private Conner's actions on 6 February 2021 has contributed to my current depression and anxiety, something that I struggle with daily. After 6 February 2021, my life took a huge downturn, solely because of the impact all of this had. I no longer felt like I could continue being a Soldier, which resulted in me ETSing from the

---

[1] Although no longer required under the changes made to Articles 60 and 60a, UCMJ, effective 1 January 2019, in this case the convening authority approved the findings and sentence. To the extent such approval without authority constitutes error, it is harmless, as it is at most superfluous and in no way impacts our jurisdiction over this appeal. *Cf. United States v. Brubaker-Escobar*, 81 M.J. 471, 472 (C.A.A.F. 2021) (convening authority's failure to take action in case with an offense committed before 1 January 2019 is harmless error).

Army. I'm still working to turn my life around and heal from what Private Conner did to me. Although I could not be at this hearing today, *I strongly believe Private Conner should receive the maximum jail sentence available.* He deserves to be impacted by his actions *for as long as possible*, especially since his actions will haunt me long after any jail sentence is finished.

(emphasis added). There was no objection to the unsworn statement.

As part of his sentencing case, appellant called five witnesses. Three were servicemembers who worked with him, and all testified as to his strong and professional work ethic, good attitude, and that he had rehabilitative potential. Appellant's father testified that appellant was a good kid and good student growing up, and that it was very difficult for him when his mother died of cancer. Appellant's younger sister testified that he struggled growing up gay in their religious household, that it was hard on him when his mother died, and that he absolutely had the ability to overcome his criminal convictions. Appellant gave an unsworn statement in which he offered a sincere apology to the victim, and explained his background, to include taking care of his mother while she was dying from cancer, and his decision to join the Army when he was 33.

In his sentencing argument, trial counsel asked for a dishonorable discharge and 24 months of confinement, and his only reference to the victim's unsworn statement was a comment that he would not rehash what was in the victim's statement "as you heard the impact that this has had on him." Defense counsel asked for 18 months' confinement. The military judge sentenced appellant to a reduction in rank to E-1, total forfeitures, twenty-three months of confinement, and the mandatory dishonorable discharge, all of which were within the agreed upon range of the plea agreement.

Appellant now claims the military judge erred in allowing the victim to ask for a specific sentence in his unsworn statement. For the reasons set forth, while we agree with appellant that the military judge erred in admitting such evidence, appellant is not entitled to any relief because the error was harmless.

## LAW AND DISCUSSION

We review a military judge's ruling on the admissibility of sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). If, however, appellant fails to object to the asserted error in the admission of sentencing evidence, as is the case here, we review for plain error. *United States v. Gomez*, 76 M.J. 76, 79 (C.A.A.F. 2017). *See also United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008).

3

Rule for Courts-Marital [R.C.M.] 1001(c)(3) states that a victim impact statement, either sworn or unsworn, "may not include a recommendation of a specific sentence." The Discussion following R.C.M. 1001(c)(5)(B) notes that "[u]pon objection by either party or *sua sponte*, a military judge may stop or interrupt a victim's statement that includes materials outside the scope of R.C.M. 1001(c)(3). *See also United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989) ("The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness. Thus, for the same reasons that we do not permit an opinion of guilt or innocence, or of 'truthfulness' or 'untruthfulness' of witnesses, we do not allow opinions as to appropriate sentences") (citations omitted). The Court of Military Appeals in *Ohrt* also criticized the use of "euphemisms" that were simply other ways to say "[g]ive the accused a punitive discharge." *Id.*

Given that R.C.M. 1001(c)(3) clearly prohibits a victim from recommending a specific sentence, we find the military judge erred in allowing the victim to voice his "strong" belief that appellant should receive the maximum sentence. On the other hand, because there was no objection at trial, in order to grant relief we must find: (1) there was error; (2) the error was clear and obvious; and (3) the error materially prejudiced a substantial right. *Gomez*, 76 M.J. at 79. In order to determine prejudice in this context, appellant bears the burden of showing the military judge's failure to prevent the admission of improper sentencing evidence "'substantially influenced the adjudged sentence.'" *Id.* at 80 (quoting *United States v. Eslinger*, 70 M.J. 193, 200-01 (C.A.A.F. 2011)).

When determining whether an error substantially influenced a sentence, we consider: (1) the strength of the Government's sentencing case; (2) the strength of the defense sentencing case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *Id.* (citations omitted); *see also United States v. Edwards*, 82 M.J. 239, 247 (C.A.A.F. 2022) (holding that prejudice due to the admission of improper sentencing matters is more likely if the information conveyed as a result of the error was not already obvious from the evidence at trial), (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)). The Court of Appeals for the Armed Forces [CAAF] in *Edwards* also explained the difficulty of applying the four-factor test to sentencing errors:

> Before analyzing the individual factors, it is worth noting that this test—which the Court has applied to errors that occur during both the findings and sentencing phases of the court-martial—is considerably more difficult to apply to sentencing. Although there is a binary decision to be made with respect to the findings (guilty or not guilty), there is a broad spectrum of lawful punishments that a panel might adjudge. Complicating matters further, it is much more difficult to compare the "strengths" of the competing sentencing arguments than it is to weigh evidence of guilt. Proof of guilt can

be overwhelming even without the erroneously admitted evidence, but there is no analogous analysis for determining the appropriate sentence.

*Id.*

Applied here, given the specific language of R.C.M. 1001(c)(3) precluding a crime victim from recommending a specific sentence, there was "clear and obvious" error satisfying the first two prongs of the plain error test. As to whether the military judge's error substantially influenced the sentence, as noted above, we look to the respective strength of each party's sentencing case as well as the materiality and quality of the evidence in question.

With respect to the government's sentencing case, after setting aside the victim's inadmissible testimony about the maximum sentence, the military judge still had before him the victim's testimony about the great impact appellant's actions had on his life, to include his depression and anxiety, and the fact that appellant's conduct caused him to leave the Army.[2] It was also permissible for the military judge to consider that ten months after the incident the victim was still "working to turn my life around and heal from what [appellant] did to me." Although appellant called witnesses who testified to his good character and willingness to work hard, on balance, the first two factors slightly favor the government, or are at best neutral. Likewise, as to the third and fourth factors, although impermissible, the "materiality and quality" of the improper sentence recommendation at best weigh only slightly in favor of appellant given the other portions of the victim's statement that were admissible.

Appellant puts great weight on the fact that the military judge imposed a term at the upper end of the allowable range (although still not the maximum), and that the military judge imposed total forfeitures and reduction in rank to E-1, even though the government did not argue for those punishments. On the other hand, as part of his plea agreement, appellant expressly agreed to be sentenced within a range of 18 to 24 months, and stipulated that any other lawful punishments, to include reduction in rank and forfeitures, could be imposed. Put another way, appellant's plea agreement, which he knowingly and voluntarily entered into with the advice of defense counsel, authorized the exact sentence that he received in this case. Finally, we note that in contrast to *Edwards*, where the CAAF expressed concern about trying to apply the four-factor "substantial error" test to a sentencing error in light of the

---

[2] Appellant does not challenge the victim's use of terms "depression" and "anxiety" as being specific medical diagnoses that could only be admitted through expert medical testimony. We agree and find that these are more general terms that do not run afoul of the holding of *Gomez* precluding a victim from providing the fact-finder "with expert testimony about her medical condition without the proper foundation being laid or her qualifications to do so." 76 M.J. at 79.

"broad spectrum" of punishments available, in this case the plea agreement limited the military judge to a much narrower range of punishments.

In sum, notwithstanding the military judge's mistake in permitting the victim to ask for the maximum sentence, on balance and in light of the entire record, we find the military judge's error to be harmless as "justice [was] done and . . . the accused [got] the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge PENLAND and Judge MORRIS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court