# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, FLEMING, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant GARY L. GOINS**
**United States Army, Appellant**

ARMY 20220088

Headquarters, Fort Bragg
Gregory B. Batdorff, Military Judge
Colonel Warren L. Wells, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Chase C. Cleveland, JA; Captain Vy T. Nguyen, JA (on brief).

25 August 2025

------------------------------------
OPINION OF THE COURT
------------------------------------

Pond, Senior Judge:

On appeal, appellant asserts he was erroneously convicted of violating a rescinded general order and, separately, that the military judge erred in considering two unsworn victim statements during the presentencing proceedings. Regarding the first claim, we find appellant's conviction for violating a general order is legally and factually insufficient because, as the government concedes, the general order was rescinded and no longer in effect at the time of appellant's offense. We set aside that charge and specification in our decretal paragraph. The second claim regarding the unsworn victim statements merits discussion but no relief.[1]

------------------------

[1] Appellant raised five additional assignments of error, including an allegation of ineffective assistance of counsel, all of which we have given full and fair consideration and find to be without merit. We address one of appellant's

(continued . . .)

GOINS — ARMY 20220088

## BACKGROUND

A military judge, sitting as a general court-martial, found appellant guilty, pursuant to his pleas, of one specification of violating a lawful general order, one specification of sexual assault of a child, three specifications of sexual abuse of a child by sexual contact, one specification of sexual abuse of a child by indecent communication, and one specification of obstructing justice in violation of Articles 92, 120b, and 131b, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920b, and 931b [UCMJ].

At the time of the offenses, appellant was a thirty-nine-year-old, activated reservist serving in Saudi Arabia. On 24 December 2020, appellant, along with other members of his unit, attended a Christmas party hosted by Saudi Aramco employees at their compound in Dhahran, in Saudi Arabia's eastern province. During the party, appellant provided alcohol to and engaged in sexual acts with a fifteen-year-old girl, the victim, whose parents knew the hosts but were not in attendance. Afterward, appellant sent the victim text messages. He called her "sexy" and stated she made him "horny." But fearing his crimes would be uncovered, appellant told the victim to delete the text messages. Appellant's misconduct was discovered the next day. At trial, appellant pleaded guilty to the charged offenses without the benefit of a plea agreement. For his crimes, the military judge sentenced appellant to a dishonorable discharge, forty-two months of confinement, and a reduction to the grade of E-1.[2]

---

(. . . continued)
assignments of error—regarding the victim's testimony—in footnote 7. In response to appellant's claim of ineffective assistance of counsel, we ordered affidavits from trial defense counsel. Having considered the record and our superior court's guidance in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we find ourselves capable of resolving appellant's claim without ordering a post-trial evidentiary hearing. We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and determine they merit neither discussion nor relief.

[2] Under segmented sentencing, the military judge sentenced appellant to forty-two months' confinement for sexual assault of a child in Specification 1 of Charge I, twenty-four months' confinement for sexual, abuse of a child by sexual contact in Specification 2 of Charge I, twelve months' confinement for sexual abuse of a child by indecent language in Specification 3 of Charge I, eighteen months' confinement for sexual abuse of a child by sexual contact in Specification 4 of Charge I, eighteen months' confinement for sexual abuse of a child by sexual contact in Specification 5 of Charge I, four months' confinement for violating a lawful general order in the

(continued . . .)

2

GOINS — ARMY 20220088

During presentencing proceedings, and after the government's sentencing case, defense objected to unsworn statements by (1) a Saudi Aramco employee, who along with his wife, hosted the Christmas party but was unrelated to the victim, and (2) the victim's mother. Defense argued neither qualified as a crime victim under Rule for Courts Martial [R.C.M.] 1001(c). In particular, defense argued the party host was not a direct victim but rather, he and his wife, were "tangential victims" and because they had alcohol in their home, the harm "was brought on by themselves." Defense further argued that considering anyone affected by appellant's crime as a victim was too broad of a reading of the rule. The military judge disagreed, in part, with the defense's narrow interpretation of R.C.M. 1001(c).

> MJ: I think you and I have different definitions of the word "direct." "Direct" doesn't mean directly touched. It is a direct impact of the result of that offense of which your client has now been found guilty in accordance with his pleas, on a person.

Addressing the potential scope of the party host's unsworn statement, the military judge concluded it was "too far afield" for the "direct impact" to include the party host and his wife having to leave Saudi Arabia following the aftermath of the Christmas party.[3] But the military judge pointed out, the party host's unsworn statement omitted any mention of that matter. The defense replied:

> DC: Your Honor, I believe it comes down to the fact that they're talking about the effect that it's had on themselves, as opposed to the effect that it's had on [the victim], and at this point, we certainly maintain that this is a tangential effect of the actions that night of the client, which he's pleaded guilty to.

The military judge overruled defense's objection, finding the party host qualified as a "crime victim," and stated:

---

(. . . continued)
Specification of Charge II, and eight months' confinement for obstructing justice in the Specification of Charge III. All sentences to confinement were ordered to run concurrently.

[3] During the government's sentencing case in aggravation, the military judge sustained a similar defense objection to the testimony of the party host's wife, citing Military Rule of Evidence [Mil. R. Evid.] 403.

> MJ: The court, when determining the definition of "direct," uses its common sense and understanding of the definition of the word. It is unquestionable that when a crime is committed at a certain location, especially when that location is someone's home, that it is foreseeable that there may be a direct impact on the owners of that home. That is particularly true in this case, when it is a social gathering where the crime occurred. It is directly foreseeable that there could be impacts upon the host of that gathering.

The military judge allowed the party host to make an unsworn statement under R.C.M. 1001(c), which included the following:

> . . . I request the forbearance of the court to describe how the actions of the defendant have affected my family; most particularly, my wife.
>
> Since Christmas afternoon 2020, hardly a day has gone by without [my wife] questioning what she could or should have done to prevent the violation of [the victim] in our house. She stays awake past midnight almost every night because when she closes her eyes, she relives the night and its aftermath. We celebrate the nights when she sleeps a full 8 hours; I think the number is less than a double handful in the past 14 months.
>
> We have lost friendships, either directly—we've not spoken to the [victim's family] since December of 2020— or indirectly, as rumors circulated around the camp soon after the Saudi police left, and we were unwilling to say anything that might expose the victim.
>
> The psychological and emotional toll has been palpable, unrelenting, and the responsibility of [appellant], following his actions at a family gathering on Christmas Eve, as a first-time visitor to our home. Thank you.

The victim's mother also provided an unsworn statement, discussing the impact of appellant's crimes on her daughter, to include PTSD, depression and anxiety:

> The people in this courtroom have not had to receive phone calls at night from a crying teenager who just can't

4

sleep, because every time she closes her eyes, she sees his face. The people in this courtroom have not had to collect their daughter from school, because she cannot study, because she needs to sleep. The anxiety and stress that comes with having to catch up on the schoolwork that she missed.

To this point, there has been no lessening of these symptoms, and none of that is predictable. From everything I've heard from doctors, and I've listened to, [the victim] could be dealing with flashbacks and the symptoms that I have listed above for years to come . . . . The past year has seen her grades drop, increased anxiety, and trouble trusting peers and adults alike . . . . We, as a family, would not be dealing with this if [appellant] had not knowingly committed this crime to which he pled guilty.

Earlier in the proceedings, during the government's sentencing case, the victim testified, recounting the events of the Christmas party and the negative effect of appellant's crimes on her mental and emotional well-being. The victim testified she was "diagnosed with PTSD" and suffered nightmares, to which the defense did not object.

During sentencing argument, the government requested the military judge adjudge twenty-five years of confinement. The defense requested the military judge adjudge no more than eighteen months of confinement. The military judge sentenced appellant to a dishonorable discharge, forty-two months of confinement, and a reduction to the grade of E-1.

Before this court, appellant argues the military judge erred in admitting the unsworn victim statement of the party host. He avers the party host was not related to the victim, there was no evidence he knew the victim well, and the military judge's conclusion that he directly suffered from appellant's crimes was erroneous. Accordingly, appellant concludes the party host was not a crime victim. Additionally, appellant argues the unsworn statement of the victim's mother exceeded the permissible scope of an unsworn victim statement by discussing her daughter's medical diagnoses, contrary to our superior court's decision in *United States v. Gomez*, 76 M.J. 76 (C.A.A.F. 2017).

## LAW AND DISCUSSION

### A. Standard of Review and Applicable Law

This court reviews a military judge's interpretation of R.C.M. 1001 de novo and the decision to admit a victim's unsworn statement, over defense objection, for an abuse of discretion. *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022) (citation omitted) ("Abuse of discretion is the proper standard of review for determining whether a military judge erroneously admitted an unsworn victim statement"). An abuse of discretion occurs when a military judge admits evidence based on an erroneous view of the law or his or her findings of fact are clearly erroneous. *Id.* (citing *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018); *United States v. Eugene*, 78 M.J. 132, 134 (C.A.A.F. 2018).

During a sentencing hearing, a crime victim has the right to be reasonably heard. Article 6b, UCMJ. This statutory right is given effect by R.C.M. 1001(c). *Barker*, 77 M.J. at 378.[4] The rule, like the statute, defines a "crime victim" as a person "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty . . . ." R.C.M. 1001(c)(2)(A). A crime victim may exercise the right to be reasonably heard by making a sworn or unsworn statement which "may only include victim impact and matters in mitigation." R.C.M. 1001(c)(3). "Victim impact" is defined as "any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

If an unsworn victim statement is erroneously considered during sentencing, this court will grant relief only if this court is persuaded the error "substantially influenced the sentence." *United States v. Campos*, 85 M.J. 310, 316 (C.A.A.F. 2025) (citations omitted). In determining whether that burden has been met, this court considers the following factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Barker*, 77 M.J. at 384 (citations and internal quotations omitted); *see also Campos*, 85 M.J. at 314 ("Although unsworn statements are not evidence, this Court has applied the same factors in considering whether improper aspects of unsworn statements caused prejudice.").

---

[4] References to R.C.M. 1001 are to the version found in *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*].

### B. Analysis

#### 1. The Unsworn Statements

We begin our analysis by noting that neither the party host nor the victim's mother were named victims on the charge sheet nor were they designated as representatives of the victim. *Cf. Edwards*, 82 M.J. at 246 (finding victim's father was permitted to proffer an unsworn statement because he had been appointed as the victim's designee). But being a named victim or a designee under Article 6b is not a prerequisite to being considered a "crime victim" under Article 6b, UCMJ, and R.C.M. 1001(c). The definition of "crime victim" does not limit it as such. Rather, both the statute and the rule define a "crime victim" more broadly as someone "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty . . . ." UCMJ art. 6b(b); R.C.M. 1001(c)(2)(A). Neither the statute nor the rule conditions the right to be heard on the inclusion of the crime victim's name on the charge sheet.

To be a crime victim, however, the harm suffered must be "direct." UCMJ art. 6b(b); R.C.M. 1001(c)(2)(A). Like the military judge here, we look to and apply the "common and approved usage" of the word. *United States v. Fetrow*, 76 M.J. 181, 186 (C.A.A.F. 2017) (stating when analyzing provisions of the Manual for Courts-Martial, courts "begin by simply reading the plain language of the rule giving effect to every clause and word") (citations omitted); *see also United States v. Valentin-Andino*, 85 M.J. 361, 365 (C.A.A.F. 2025) (citation omitted) ("a court may consult a lay dictionary in the course of defining" a common word or phrase that "lacks a unique legal meaning"). "Direct," as an adjective, is defined as "proceeding from one point to another in time or space without deviation or interruption;" "stemming immediately from a source;" "marked by absence of an intervening agency, instrumentality, or influence;" and "characterized by a close logical, causal, or consequential relationship." *Merriam-Webster Online Dictionary*, https://merriam webster.com/dictionary/direct (last visited 25 Jul. 2025). From this definition, we determine that for a harm to be direct there must be no intervening cause and there must be a logical and causal relationship between appellant's crimes and the harm to the victim.

The military judge referenced whether the harm to the party host and his wife was "foreseeable." The word "foreseeable," however, is not found in the text of the statute or the rule. The rule states the harm must be "a result of" the accused's crimes, which may be divorced from whether the harm was anticipated or not. On

the other hand, "foreseeability," by itself, has the potential to be applied too broadly. Thus, we will apply the plain language of the rule.[5]

We acknowledge there is a fair amount of case law interpreting "victim impact" under the government's presentation of evidence in aggravation under R.C.M. 1001(b)(4). But we hesitate to apply that case law to our interpretation of R.C.M. 1001(c). While there are similarities in the language, "[e]vidence in aggravation is different from a victim's statement under R.C.M. 1001(c) in significant ways. Aggravation evidence is subject to the Mil. R. Evid., which means that a witness who provides such evidence must testify under oath and be subjected to cross-examination. In addition, "the military judge must test the evidence for unfair prejudice under M.R.E. 403." *Campos*, 85 M.J. at 316 (citation omitted). In contrast, "the Military Rules of Evidence are inapplicable to unsworn victim statements," *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021), and are neither under oath nor subject to cross-examination.

Applying the plain language of the rule, the test of whether a harm is direct under R.C.M. 1001(c) is whether the harm is logically and causally related to the offense of which the accused is convicted. Additionally, there must be no intervening cause. These will be very fact-specific questions. We will give "substantial deference" to a military judge's findings of fact unless clearly erroneous. *United States v. Harrington*, 81 M.J. 184, 189 (C.A.A.F. 2021) (internal quotations and citation omitted); *see also Tyler*, 81 M.J. at 113 ("the military judge is the gatekeeper for unsworn victim statements").

Applied to this case, while the military judge limited the scope, the unsworn victim statement of the party host is still problematic. First, the harm he described is not to him but to his wife. And the rights given effect by R.C.M. 1001(c) "are personal to the victim in each individual case." *Barker*, 77 M.J. at 382 (stating, "All of the procedures . . . contemplate the actual participation of the victim, and the statement being offered by the victim or through [their] counsel.").[6] We agree with the military judge that depending upon the circumstances, the owner of a home

---

[5] Unlike the analogous Crime Victims' Rights Act, Article 6b, UCMJ, and R.C.M. 1001(c) do not include the word "proximately." Crime Victims' Rights Act, 18 U.S.C. § 3771(e)(2)(A) (stating a "crime victim" is "a person directly and *proximately* harmed as a result of the commission of [his] Federal offense") (emphasis added); *see also United States v. Sharp*, 463 F. Supp. 2d 556, 565 (E.D. Va. 2006) ("Foreseeability is at the heart of proximate harm").

[6] The court in *Baker* was analyzing R.C.M. 1001A, which was the precursor to R.C.M. 1001(c) discussed here.

where an accused commits the crime may suffer directly as a result of the offense. But here, the party host's unsworn statement described the emotional toll to his wife, not to him. Second, he stated they lost friendships, but did not clearly state—nor is it obvious—the loss of friendship was a direct result of appellant's crimes rather than the result of someone else's actions or other intervening circumstance. Consequently, we find no causal tie between the offenses appellant committed and the party hosts' loss of friendships. This portion of his unsworn statement—along with the portion discussing the harm to his wife—exceeded the scope of permissible victim impact under R.C.M. 1001(c) and should not have been considered.

In contrast, the unsworn statement of the victim's mother, while made in the context of the impact to her daughter, was still personal to her. She described receiving distraught phone calls in the middle of the night from her daughter and collecting her daughter from boarding school because she could not study. Her unsworn statement connected her daughter's harm to her own. Here, we agree with our sister service court that "a parent responsible for the safety and well-being of children and who witnesses the suffering of those children may be harmed as much as, if not more than, the children themselves." *United States v. Dunlap*, No. ACM 39567, 2020 CCA LEXIS 148, at *25-26 (A.F. Ct. Crim. App. 4 May 2020) (unpub. op.).

We also find *Gomez*, supra, cited by appellant, inapplicable here. In that case, the military judge allowed testimony from a complaining witness that the appellant was responsible for her pregnancy complications and that referenced medical diagnoses during the government's sentencing case under R.C.M. 1001(b)(4). *Gomez*, 76 M.J. at 79-80. Our superior court found the testimony—which appeared to include expert opinion without proper foundation and hearsay—raised admissibility concerns under Mil. R. Evid. 701, 702, and 802. The court, however, ultimately did not decide whether such testimony was inadmissible. *Id.* (stating it was "a close question"). More crucial to our analysis, the court in *Gomez* was analyzing *testimony* during the government's sentencing case. And as we noted above, testimony presented during the government's case under R.C.M. 1001(b)(4) is different from and subject to different rules than a victim's statement under R.C.M. 1001(c)—specifically, the military rules of evidence. Thus, we find *Gomez* inapplicable to the unsworn victim statements presented in appellant's case.

A military judge, however, still "has an obligation to ensure the content of a victim's unsworn statement comports with the parameters" and limitations found in R.C.M. 1001(c). *Tyler*, 81 M.J. at 112; *see also United States v. Hamilton*, 78 M.J. 335, 342 (C.A.A.F. 2019) (unsworn victim impact statements are "not a mechanism whereby the government may slip in evidence in aggravation that would otherwise be prohibited by the Military Rules of Evidence."). In appellant's case, we find the contents of the unsworn statement of the victim's mother fell within those parameters.

For all these reasons, we conclude the military judge did not abuse his discretion in considering the unsworn statement of the victim's mother under R.C.M. 1001(c).[7]

## 2. *Prejudice*

While the military judge abused his discretion in admitting the unsworn victim statement of the host of the party, we do not find this error substantially influenced the sentence.

The government's sentencing case in aggravation was strong. In the absence of a stipulation of fact, the government called the victim who described in great detail the events of the Christmas party and the egregiousness of appellant's misconduct. The unit First Sergeant testified that because of appellant's offenses, the unit's relationship with the Saudi leadership at the training facility became strained. Separate from her unsworn victim statement, the victim's mother testified to the emotional and physical toll of the event on her daughter to include increased anxiety, depression, significant weight loss, and hair loss. The government called an expert in trauma who testified to potential long-term psychological and physiological effects the victim could experience. Lastly, the court-martial heard testimony from witnesses who observed appellant and provided details of the aggravating circumstances surrounding the offenses.[8]

---

[7] Appellant alleges it was error for the victim to testify during the government's sentencing case that she was "diagnosed with PTSD" in light of our superior court's decision in *Gomez*, supra. Considering that decision and that defense did not object to the victim's testimony here, we find no plain and obvious error. The victim mentioned the diagnosis before giving a description of her symptoms, to include nightmares, which were within her personal knowledge. Her testimony did not cross the line into opining on medical causation. Also, a diagnosis of PTSD resulting from trauma is not clearly beyond the realm of common experience. *Cf. Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014) (finding avascular necrosis "beyond the realm of common experience" requiring "the special skill and knowledge of an expert witness."). And, unlike *Gomez*, the government in this case presented expert testimony on the effects of PTSD. For these reasons, we find the victim's testimony fails to raise the same concerns discussed by our superior court in *Gomez*. 76 M.J. at 80-81 (stating victim's testimony that her preeclampsia, as a result of stress from the trial, caused her child to be born prematurely raised concerns of admissibility under the rules of evidence). Even assuming it was error, we find no prejudice.

[8] As part of its sentencing case, the Government introduced a deposition where the witness testified that after appellant was informed by another adult that the victim

(continued . . .)

In contrast, the defense sentencing case was more limited. It included four character witnesses, one of whom worked with appellant on a monthly basis in his reserve capacity and one of whom was closest to appellant approximately fifteen years before the misconduct. Appellant also provided an unsworn statement. The most mitigating factor, as highlighted by defense during closing, was appellant's plea of guilty.

We are convinced the materiality of the unsworn victim statement was low. The substance of the party host's unsworn statement added little in comparison to the testimony during the government's sentencing case in aggravation, specifically the victim's testimony about the events of that evening and the resulting impact to her. The quality of the victim unsworn statement was also low. By its nature, it was neither sworn nor subject to cross-examination. And it was very brief. *Cf. Edwards*, 82 M.J. at 247-48 (finding the materiality and quality of an emotionally moving video containing a slideshow of photographs of the victim accompanied by music offered as an unsworn victim statement substantially influenced the sentence).

Based on the sentencing evidence presented, we are convinced that the unsworn victim statement from the party host did not substantially influence appellant's sentence.

## CONCLUSION

On further review and consideration of the entire record, the findings of guilty of The Specification of Charge II and Charge II are SET ASIDE and that Specification and Charge are DISMISSED. The remaining findings of guilty are AFFIRMED. The sentence to four months confinement for The Specification of Charge II is SET ASIDE. The remainder of the sentence is AFFIRMED.[9]

---

(. . . continued)
was in high school, appellant responded, "I'm trained to deal with adolescents. There's absolutely nothing to worry about. I know how to handle teenagers that are . . . looking for attention."

[9] Having considered the entire record, including the segmented sentences to confinement for each specification of which appellant was convicted, we are able to reassess the sentence in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). Our reassessment is aided by the segmented sentence of four months confinement for the dismissed specification as well as the mandatory dishonorable discharge for the offenses of sexual assault of a child and sexual abuse of a child. *MCM*, pt. IV, ¶ 62.d.(2) and

(continued . . .)

Senior Judge FLEMING and Judge MORRIS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

(. . . continued)

(3). Reassessing the remainder of the sentence, we are confident the military judge would have sentenced appellant to a dishonorable discharge, forty-two months confinement, and a reduction to the grade of E-1, even absent the dismissed specification.